Eldon WALLINGFORD, Appellant,

v.

KROGER COMPANY d/b/a Kroger
Food Store, Appellee.

ZURICH INSURANCE
COMPANY, Appellant,

v.

KROGER COMPANY d/b/a Kroger
Food Store, Appellee.

Nos. 87–CA–1240–MR, 87–CA–1381–MR.

Court of Appeals of Kentucky.

Aug. 26, 1988.

Discretionary Review Denied by Supreme
Court Jan. 11, 1989.

James G. Lemaster, Mark T. Hayden,
Lexington, John I. Hanbury, Ashland, for
appellants.

J. Gregory Wehrman, Covington, for appellee.

Before COMBS, HAYES and WEST,
JJ.

HAYES, Judge:

In these consolidated appeals, Eldon
Wallingford and Zurich Insurance Company appeal from an order and judgment
entered May 20, 1987, in Mason Circuit
Court granting the defendant, Kroger
Company, a directed verdict in appellants'
negligence action. This action was filed
originally by Wallingford; Zurich Insurance Company intervened as the insurance
carrier of Wallingford's employer, Coca–
Cola Bottling Company, seeking indemnity
for $22,451.43 in workers' compensation
and medical expenses. The issues on appeal are whether the trial court erred in
holding that (1) Kroger owed Wallingford

no duty to provide a safe working environment, and (2) Wallingford assumed the risk by attempting to make the area safe himself.

It was stipulated that at the time of the accident, Wallingford, a 50–year–old delivery truck driver for Coca–Cola Bottling Company, was acting in the course and scope of his employment when the accident occurred.

This action was commenced in January, 1985, alleging that on January 17, 1984, Wallingford was delivering Coke products to a Maysville Kroger store. Ice and snow covered the delivery ramp at the back of the store, causing him to slip and fall, and sustain back injuries. On May 6, 1987, a jury trial was held, but the trial court granted Kroger's motion for a directed verdict at the close of Wallingford's proof on Kroger's liability. CR 15.01.

Wallingford testified first, and stated that he'd delivered Coke products to the Maysville store since it was built in 1980. On the morning of the accident the weather was poor; there was ice and snow, and the wind was blowing. At around 8:00 a.m. he pulled around the back of the store, descended from his truck, and walked up an icy ramp to the back door. He pressed the button activating the store intercom system, and spoke to a female voice in the front office. Wallingford told the woman that the ramp was slick and needed to be cleared off. He also suggested that he be let in through the front door, but was refused by a male voice over the intercom, because of a company policy that all vendors use only the back entrance. Wallingford initially entered the back door without his product in order to check the condition of the shelves. He stated that usually Charles Fritz [1] worked as back door receiver and cleaned off the ramp for the vendors. Fritz was not working that day.

Again Wallingford requested, this time to the clerk replacing Fritz, Steve Sutton, that the ramp be cleared, but he got no response. Wallingford then attempted to clear it himself with a shovel or squeegee. Thinking he had cleared it sufficiently, he proceeded up the ramp with a six-wheeled cart filled with Coke products. When he got a third of the way up, he fell, sustaining back injuries. Because he did not think he had injured himself badly, he proceeded with his work and did not tell anyone at Kroger. Later, after he had left the store, his condition worsened, and he sought medical attention the following day. He did not return to work during the rest of 1984 or 1985. He later returned in 1986 to fill a newly created position requiring little physical activity.

Jim Sapp, the store manager working on that day, testified that he'd had complaints from vendors in the past that the slope of the ramp was built too steeply. The only company-wide exception to Kroger's back door policy was given to the ice deliverymen. No exceptions were permitted due to inclement weather. He testified that it was the responsibility of the back door receiver to clean off the ramp, or to order someone else to do it. Salt and a shovel were always located at the back door.

JoAnn Potts, Kroger's front end manager working on the day of the accident, testified that the only time in 15 years that she'd seen vendors let in through the front door was during a blizzard, because the trucks could not get to the docks. She did not specifically remember Wallingford ringing the buzzer that day, but stated that if she were in the office, she probably spoke with him.

Charles Fritz testified that he had heard vendors complain of the incline of the ramp. He also stated that his work included cleaning off the ramp, although he did not remember ever having had to do it. Steven Sutton testified that he, too, had heard the vendors complain of the steepness of the ramp on occasion. Although someone usually cleared it off for the vendors, or they did it themselves, he did not know whose specific responsibility it was to ensure that it was done.

Counsel for Wallingford then attempted to introduce expert testimony that the slope was built too steeply for its intended

---

1. The record refers to him also as "Bob" Fritz.

purposes, but Kroger's subsequent objection was sustained. After the jury was recessed, the court refused to permit the testimony to be placed into the record on avowal but instead allowed counsel to state on the record that the expert would have testified that the ramp was in violation of ingress and egress codes and was built too steeply.

Kroger moved for a directed verdict based on *Ashcraft v. Peoples Liberty Bank & Trust Co.*, Ky.App., 724 S.W.2d 228 (1986) and *Standard Oil v. Manis*, Ky., 433 S.W.2d 856, 859 (1968). The trial court not only stated that under those cases no duty existed, but that Wallingford assumed the risk when he attempted to clear off the ramp himself.

Appellants argue that Kroger owed Wallingford a duty to provide a reasonably safe entrance for three reasons: (1) his employment required that he enter the store to make deliveries; (2) his only means of entering was a steep, ice covered ramp; and, (3) the ramp was maintained regularly by Kroger employees and was located close to the store as part of the building structure.

■ The latest case the Court finds on the subject of duty to invitees [2] is *Corbin Motor Lodge v. Combs*, Ky., 740 S.W.2d 944 (1987). Therein Kentucky's highest court followed *Standard Oil v. Manis*, Ky., 433 S.W.2d 856 (1968), in holding that a restaurant operator had no duty to remove or warn against the danger of open and obvious icy conditions of its sidewalk. In *Manis, supra*, a truck driver delivering gasoline seriously injured his back from a fall on an icy platform. The Court stated the rule to be that "natural outdoor hazards which are as obvious to an invitee as to the owner of the premises do not constitute unreasonable risks to the former which the landowner has a duty to remove or warn against." 433 S.W.2d at 858.

There was also a strong dissent in *Corbin:*

To hold that because the hazard was as obvious to Combs as it was to the restaurant management is not a sufficient reason to deny Combs an opportunity to prove negligence. The management had at its disposal the means to remedy or warn against the hazard. Combs did not. In 4 S. Speiser, C. Krause, and A. Gans, *The American Law of Torts*, § 14:40, p. 53 (1987), this issue is discussed as follows:

"The rule that the obviousness of the danger relieves the owner of premises from liability is no longer universally accepted. In accordance with the rule of the Restatement of Torts that a possessor of land is subject to liability to invitees which is caused by a condition on this [sic] land, if he should realize that the condition involves an unreasonable risk of harm to the invitees and should expect that they will not discover or realize the danger, it has been held that a cause of action can be maintained by an invitee for injuries resulting from a slip and fall occasioned by natural accumulations of ice and snow,—even though the condition was well known to the plaintiff. It has been held that well-known climatic conditions do not negate the possibility that the possessor of the premises should have anticipated harm to the business invitee, despite the latter's personal knowledge of the dangerous snow and ice conditions or the general obviousness of such conditions."

740 S.W.2d at 947, 948. The dissent suggested further that the case should have gone to the jury under the comparative negligence standards of *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984).

The rule in *Manis* has also been applied recently to deny liability in *Ashcraft v. Peoples Liberty Bank & Trust Co.*, Ky. App., 724 S.W.2d 228 (1987), involving a customer slipping on an icy bank parking lot. Because there was no duty the Court held there can be no liability.

■ Initially, appellants are correct that the doctrine of assumption of risk was

---

**2.** Wallingford is an invitee, defined as one who enters the premises upon business which concerns the occupier, upon his invitation express or implied. Prosser, *Law of Torts* § 61 (1971). *Durbin v. Louisville & N.R. Co.*, 310 Ky. 144, 219 S.W.2d 995 (1949).

abolished in *Parker v. Redden*, Ky., 421 S.W.2d 586 (1967). *See also Hilen v. Hays, supra,* at footnote 2. The trial court was in error by using the doctrine in granting the directed verdict.

■ We also agree that the question of comparative negligence should have been given to the jury. It is true that under *Manis, supra,* and its progeny, the existence of obvious, outdoor, natural hazards generally creates no duty upon the owner/occupier of the land, on the theory that the hazard is as obvious to both the owner and the invitee. However, we believe that a far different situation is presented where the invitee is compelled by his employment to use a particular path and entranceway, asks for assistance in making it safe and is refused, attempts to clear the path himself, proceeds cautiously, and is injured anyway. In *Manis, supra,* the gasoline deliveryman had stepped upon an icy platform when he fell. Although *Manis* denied liability on the theory that invitees assume all normal and obvious risks attendant to the use of the premises, there is no indication in *Manis* that the deliveryman had no other recourse but to use the particular walkway, and there is no indication that he took reasonable steps to ensure his own safety. Wallingford's testimony reveals that he went to great lengths to ensure a safe walkway. He knew that he would be pulling hundreds of pounds of products. Photographs placed in evidence reveal that the ramp, indeed, appears dangerously steep. Wallingford obviously had no other recourse but to proceed at his peril or risk losing his means of livelihood. Kroger's store manager, Jim Sapp, admitted that complaints had been voiced by the vendors before, and admitted that usually the back door receiver took responsibility to see that the ramp area was clear. Additionally, Kroger admits in its answer to interrogatories that either a "bag boy" or "sacker" would have removed snow and ice on January 17, 1984.

Another case softening the rigidity of the *Manis* rule is *City of Madisonville v. Poole,* Ky., 249 S.W.2d 133 (1952), wherein the plaintiff fell on a sheet of ice on the defendant city's clubhouse porch as she was about to enter the building. The Court held that it was a jury question as to whether the defendant should have taken care to remedy the unsafe condition. *Manis* "assumed" the soundness of the decision, but distinguished it by the fact that the hazard may not have been as equally obvious to the invitee, as the porch was unlit and was covered by a ceiling of some type.

In utilizing the general rule of *Manis,* courts must not apply it so as to overshadow or obliterate the established principle that an owner/occupier of land is laden with certain duties of reasonable care toward his invitees:

> An invitee has a right to assume that the premises he has been invited to use are reasonably safe, but this does not relieve him of the duty to exercise ordinary care for his own safety, nor does it license him to walk blindly into dangers that are obvious, known to him, or would be anticipated by one of ordinary prudence. [Citations omitted].

*Smith v. Smith,* Ky., 441 S.W.2d 165 (1969).

■ In this case Wallingford testified that he took such ordinary care. Our ruling today does no disservice to *Manis* or the principles which it evokes, but only underscores the widely applied rule that all persons should exercise ordinary care for the safety of others who foreseeably may be injured by their acts or omissions. *Grayson Fraternal Order of Eagles v. Claywell,* Ky., 736 S.W.2d 328 (1987). With the previous case authority in mind, reference is made to the Restatement (Second) of Torts, § 343(A) comment f (1965), which carves out an exception to the general rule governing natural and obvious outdoor hazards:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care

which he owes to the invitee for his protection....

Such reason to expect harm to the visitor from known or obvious dangers may arise ... where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

Appellants next argue that *Ferguson v. J. Bacon & Sons*, Ky., 406 S.W.2d 851 (1966), holds that the general rule of *Manis* additionally does not apply if the area itself is inherently dangerous or improperly constructed, and therefore the trial court erred in disallowing evidence that the ramp contains those attributes. In *Ferguson*, an employee of a dress shop slipped on an ice covered parking lot. The Court quoted an Ohio decision, *Levine v. Hart Motors, Inc.*, 143 N.E.2d 602 (Ohio App., 1955), which stated that:

> In cases where there is no act on the part of the landlord creating a greater danger then was brought about by natural causes, the dangers that are created by the elements, such as forming of ice and the falling of snow, are universally known and unless the landlord has contracted to provide against these dangers, all persons on his property must assume the burden of protecting themselves therefrom. (Emphasis ours).

*Ferguson*, 406 S.W.2d at 852.

This Ohio decision was the basis of the Ferguson Court's language that the store owner would not be liable to a customer who slips outside the building "if the area is properly constructed and not inherently dangerous." 406 S.W.2d at 852. The Ohio decision also explains the language in *Ferguson* that "[t]here was no showing in this case that the parking lot was not properly constructed, nor was it shown there was any special contract concerning its use." Thus, the general "no duty" rule finds an exception where there is evidence of the owner/occupier's creation of an inherent danger. Evidence of inherent danger would then, under *Ferguson*, be relevant if there is evidence that Kroger itself created the danger by design, construction or otherwise. Although a conversation between counsel for Kroger and the trial court suggests that Kroger leases the building, this Court cannot glean from the record whether appellants have evidence that Kroger is responsible for the design. Counsel for Kroger admitted to the court that the building probably was built in accordance with Kroger's specifications. Upon retrial, evidence may be offered in that regard as further evidence of Kroger's negligence under *Ferguson, supra*. Although Kroger argues that evidence of inherent dangerousness raises a new theory that should have been raised in the complaint, upon remand the appellants will be permitted to amend their complaint to conform to this evidence. The right to amend after reversal because of defective pleadings is the same as before trial. *London & Provincial Marine & Fire Ins. Co. v. Mullins*, 268 Ky. 814, 105 S.W.2d 1057 (1937).

Accordingly, the order and judgment entered May 20, 1987, in Mason Circuit Court directing a verdict against the appellants is reversed and remanded for further proceedings consistent with this opinion.

REVERSING AND REMANDING.

All concur.