**Linda A. ROGERS, Appellant,**

v.

**PROFESSIONAL GOLFERS ASSOCIATION OF AMERICA, Valhalla Golf Club Ltd., L.P. d/b/a Valhalla Golf Club, PGA Valhalla, Inc., and PGA Tournament Corporation, Inc., Appellees.**

**No. 1999–CA–000836–MR.**

Court of Appeals of Kentucky.

Sept. 22, 2000.

Brentley P. Smith, Louisville, for Appellant.

David K. Barnes, Deanna M. Tucker, Louisville, for Appellees.

Before: BUCKINGHAM, KNOPF, and SCHRODER, Judges.

## OPINION

BUCKINGHAM, Judge:

Linda A. Rogers appeals from a summary judgment entered by the Jefferson Circuit Court in favor of the Professional Golfers Association of America, Valhalla Golf Club, Ltd., L.P. d/b/a Valhalla Golf Club, PGA Valhalla, Inc., and PGA Tournament Corporation, Inc. The case arose from an incident where Rogers slipped and fell on a grassy hillside to the left of the seventeenth fairway at the Valhalla Golf Club during the playing of the 1996 PGA golf championship in Louisville, Kentucky, in August 1996. We have examined the record, considered the arguments of counsel, and reviewed the applicable law. We conclude the trial court properly granted summary judgment in favor of the PGA and Valhalla.

The PGA golf championship, one of the four major championships in the world of golf, was played at the Valhalla Golf Club in Louisville, Kentucky, over the four days of August 8–11, 1996. Thousands of spectators, including Rogers and her husband, who was a member of the golf club, attended the event to watch the golf action at the course.

A rainstorm hit the golf course on the first day of the tournament, and the course was still wet and muddy in places on the second day. When Rogers and her husband decided to leave the tournament at the conclusion of the first day, they proceeded from the area of the seventeenth green and eighteenth tee to the main entrance by way of the rough area along the left side of the seventeenth fairway. The rough in this area was grassy and hilly.

At the top of the rough area was a "tent village," which consisted of a gated area containing corporate booths or tents. In order to gain access into the tent village, a spectator was required to have a special ticket. If one could enter the tent village near the seventeenth green and proceed from one end to the other, then access to the main entrance could be had without walking over the grassy hillside. Although Rogers and her husband did not have special tickets to gain access to the tent village area, she requested and was granted permission to enter the area so as to walk from one side to the other to the main entrance in order to avoid the hillside because she had previously had knee surgery which continued to cause her concern.

On the second day of the tournament, Rogers and her husband again returned to watch the golf action, and later exited the main entrance to go to the merchandise tent to purchase various items of golf merchandise. They then decided to re-enter at the main entrance and proceed back toward the seventeenth green and eighteenth tee area. However, the guard or employee at the gate to the tent village would not let Rogers in the village area because she didn't have the proper ticket. Since she and her husband wanted to watch golf action in that area of the course, they proceeded across the grassy hillside toward the seventeenth green. While doing so, Rogers slipped and fell, injuring her leg.

Approximately one year later, on August 7, 1997, Rogers filed suit in the Jefferson Circuit Court against the appellees. In December 1998, the appellees filed a motion for summary judgment to which Rogers did not respond. In February 1999, the trial court granted summary judgment to the appellees, and this appeal followed.

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is enti-

tled to judgment as a matter of law. CR[1] 56.03. Summary judgment should only be applied when, as a matter of law, it appears it would be impossible for the non-moving party to produce evidence at trial warranting a judgment in its favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 483 (1991). In addressing a summary judgment motion, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Id.* at 480.

■ Although the trial court's order granting summary judgment to the appellees cited no authority and gave no explanation, it is apparent the trial court concluded that the appellees owed no duty to Rogers because it believed the hillside was an open and obvious hazard. "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, Ky.App., 724 S.W.2d 228, 229 (1987). Therefore, the issue before this court is whether the appellees owed Rogers any duty with respect to the hillside where she was injured.

■ As a tournament patron, Rogers was an invitee. Generally, the owner of premises to which the public is invited has a general duty to exercise ordinary care to keep the premises in a reasonably safe condition. *McDonald v. Talbott*, Ky., 447 S.W.2d 84, 86 (1969). However, "[r]easonable care on the part of the possessor of business premises does not ordinarily require precaution or even warning against dangers that are known to the visitor or so obvious to him that he may be expected to discover them." *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, Ky.App., 997 S.W.2d 490, 492 (1999), quoting *Bonn v. Sears, Roebuck & Co.*, Ky.,

440 S.W.2d 526, 528 (1969). *See also Standard Oil Co. v. Manis*, Ky., 433 S.W.2d 856 (1968), wherein the court held that owners of premises do not have a duty to warn against natural outdoor hazards which are as obvious to the invitee as to the owner. *Id.* at 858.

Further, the court in *Smith v. Smith*, Ky., 441 S.W.2d 165 (1969), held that

An invitee has a right to assume that the premises he has been invited to use are reasonably safe, but this does not relieve him of the duty to exercise ordinary care for his own safety, nor does it license him to walk blindly into dangers that are obvious, known to him, or would be anticipated by one of ordinary prudence.

*Id.* at 166. Rogers testified that she had played golf approximately three times per year for ten years. As a result of this experience, she knew that golf courses have varying terrain, vegetation, and grass conditions. She also stated that she knew golf courses have hills, valleys, and undulating aspects of geography. In fact, she stated that she thought Valhalla was a little hillier than other courses.

Rogers also testified in her deposition that there was a significant rainfall on the day before she fell. She stated that the rainfall was so heavy that she had to wear different shoes to the second day of the tournament because her other pair was soaked from the rain. Nevertheless, despite having had a prior knee surgery which continued to cause her concern and despite seeing the hillside with its matted grass before traversing it, Rogers chose to proceed.

Rogers asserts that the grass was dry but the ground underneath was wet and slick and that the hazard was therefore not open and obvious. She argues that there was at least a factual issue in this regard.

---

1. Kentucky Rules of Civil Procedure.

We disagree. Rogers could see the slopes on the hillside, could see the matted grass, and knew or should have known that the ground underneath could have been slick or wet due to the heavy rainfall on the prior day. Had she exercised ordinary prudence, she would have realized the danger from this hazard. *See Smith,* 441 S.W.2d at 166.

■ Rogers next contends that even if the hillside was an open and obvious hazard, the appellees were nevertheless not relieved of their duty to exercise ordinary care for her protection because they had reason to expect that she or other spectators would walk on the hillside despite the risk. In support of her argument, she cites *Wallingford v. Kroger Co.,* Ky.App., 761 S.W.2d 621 (1988), wherein the court noted the following exception to the general rule governing natural and obvious outdoor hazards:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. . . .

> Such reason to expect harm to the visitor from known or obvious dangers may arise . . . where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

*Id.* at 624–25, quoting the Restatement (Second) of Torts § 343(A) cmt. f (1965). In *Wallingford,* a delivery man slipped and fell on a delivery ramp that was slick with ice and snow after he had been denied entry into the store through a less hazardous entrance. *Id.* at 622. We believe the facts of that case are distinguishable from those herein because in that case the delivery man had been allowed only one route into the store to make his delivery. In this case, however, Rogers was not forced to cross the hillside. There were other avenues to move around the golf course besides the one by the seventeenth fairway.

■ Rogers also argues that the hillside was not a natural outdoor hazard but was an "unnatural" one because the natural terrain had been altered from farmland to a stadium golf course. She thus asserts that the principles of the *Manis* case are not applicable. We believe it is irrelevant as to whether the hillside may be considered a natural or unnatural condition. Even if the condition is man-made, the open and obvious rule would apply. For example, in the *Bonn* case the court held that no duty was owed by a possessor of business premises where a customer fell into a grease pit. *Id.,* 440 S.W.2d at 529. In short, we conclude the trial court properly held that the hillside was an open and obvious condition and that the appellees owed no duty to Rogers and other spectators who chose to proceed across it.[2]

■ Finally, Rogers contends that the trial court erred in granting summary

---

2. An old Missouri case, *Thompson v. Sunset Country Club,* 227 S.W.2d 523 (Mo.App.1950), is factually similar and somewhat persuasive. In that case, Thompson, a spectator at a golf tournament, fell and was injured on a hillside after being directed by a club employee to follow other spectators down the hill rather than cross a bridge. In directing a verdict in favor of the country club, the court held

> the rocky descent was not an unusual thing to encounter on a golf course since the game is played over acres of irregular terrain, some of which is intentionally left in a rough state. Plaintiff's husband was a golf player and she had seen him play on occasions and knew enough about the game to be familiar with the general character of golf courses. In following the players she assumed the risks ordinarily incident to watching such a match and to walking over the course.

*Id.* at 525.

judgment to the appellees because it was premature due to her being denied complete and full discovery. She cites *Roberson v. Lampton*, Ky., 516 S.W.2d 838 (1974), in support of her argument. She asserts that further discovery was necessary to gather proof relative to the course design, the appellees' knowledge of any dangerous conditions, and the appellees' role in the construction, maintenance, and inspection of the course. Because we believe the hillside was an open and obvious condition as a matter of law, we conclude that further discovery was unnecessary.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.