*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0433P (6th Cir.)
File Name: 03a0433p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

AVIS THOMPSON,
    *Plaintiff-Appellant,*


    *v.*                     No. 03-5247


TOMMY and ELIZABETH
BREEDING,
    *Defendants,*


JAMES KNIFLEY and JIMMIE
KNIFLEY REALTY CO., INC.,
    *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 00-00140—E. Robert Goebel, Magistrate Judge.

Argued: September 30, 2003

Decided and Filed: December 8, 2003

Before: MARTIN, MOORE, and CLAY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Jonathan Ray Spalding, Lebanon, Kentucky, for Appellant. Timothy L. Edelen, BELL, ORR, AYERS & MOORE, Bowling Green, Kentucky, for Appellees. **ON BRIEF:** Jonathan Ray Spalding, Elmer J. George, Lebanon, Kentucky, for Appellant. Timothy L. Edelen, BELL, ORR, AYERS & MOORE, Bowling Green, Kentucky, for Appellees.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Circuit Judge. Avis Thompson appeals the magistrate's grant of summary judgment in favor of James Knifley and Jimmie Knifley Realty Co., Inc., on various claims for damages arising out of a failed real estate sale. Two issues are presented in this appeal. The first is whether the magistrate correctly determined that Thompson has no right of action against Knifley or Knifley Realty for damages caused by their alleged violations of section 330.110 of the Kentucky Revised Statutes. The second is whether Thompson's negligence claim was properly dismissed on summary judgment. While we disagree with the magistrate's reasoning as to the first issue, we find that his ultimate conclusions were correct as to both issues and, therefore, we affirm.

I.

The essential facts of this case are not in dispute. In May 2000, Thompson contacted the Knifley Realty office and spoke to Knifley about purchasing real estate in Campbellsville, Kentucky. During the week of May 14, Knifley showed Thompson various local properties that were

available for sale. One of those properties belonged to Tommy and Elizabeth Breeding and was scheduled to be auctioned on Saturday, May 20, at an auction conducted by Knifley himself. Thompson attended the auction, which was held at the Breedings' home, and decided to bid on the property. Her $136,000 bid prevailed and she agreed to pay an advertised ten percent buyer's commission, bringing the total purchase price to $149,600.

A few hours after the auction had ended, Thompson returned to the property with a friend in order to measure rooms in the home. The Breedings' son had given Thompson a garage door opener earlier in the day to allow access to the house, but apparently the garage door was already open when she arrived. Thompson entered through the garage and noticed a large wet and slimy patch on the garage floor, which she walked around on her way into the house. From a back window, she observed three young men in the yard carrying items that she surmised were stolen from the property. Thompson quickly walked back through the garage toward the outside so that she could confront them, and in doing so caught her left foot on a garden hose lying on the garage floor, causing her right foot to land on the wet spot and slip out from under her. Thompson fell and sustained injuries. In her deposition, Thompson admitted that she was aware of the wet spot before she stepped in it and, in fact, that the wet spot "was obvious . . . to anyone who was looking."

A few days after the auction, a storm damaged the property, blowing down at least two trees and damaging several others. Knifley and the Breedings believed that this damage did not materially affect the contract for sale and offered to replace the mature trees with new trees and to clean up the fallen limbs. Thompson, however, had chosen the property partially because of the trees and the cover they provided. Therefore,

this damage contributed to her ultimate decision not to close on the property.[1]

Unable to complete the sales transaction with Thompson, the Breedings hired Knifley to conduct a second auction of the property on August 12. The high bid at the second auction was $150,200 – $14,200 more than Thompson's high bid. With the ten percent buyer's commission, the total purchase price amounted to $165,020 – $15,420 more than the total purchase price Thompson had agreed to pay.

Thompson filed a complaint against Knifley, Knifley Realty and Tommy and Elizabeth Breeding, alleging violations of section 330.110(10) and (11) of the Kentucky Revised Statutes, as well as claims for negligence and breach of contract. The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the parties consented to try the matter before a magistrate. The magistrate granted summary judgment in favor of the defendants on all claims, holding that (1) Thompson had no right of action against any of the defendants for damages caused by their alleged violations of section 330.110; (2) Thompson could not prevail on her negligence claim because none of the defendants owed her a duty in light of the open and obvious nature of the hazard that caused her injury; and (3) it was Thompson, not the defendants, who had breached the contract for sale. Thompson subsequently settled her dispute with the Breedings, but she appealed the magistrate's rulings with respect to her section 330.110 and negligence claims against Knifley and Knifley Realty.

---

[1]Thompson had argued that the defendants materially breached the contract for sale by refusing to replace the damaged trees with mature trees or to reduce the purchase price of the property by $15,000. The magistrate rejected that argument and held that Thompson had breached the contract by refusing to close on the property. That ruling has not been appealed.

## II.

We review *de novo* a district court's grant of summary judgment. *Johnson v. City of Cincinnati,* 310 F.3d 484, 490 (6th Cir. 2002). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Because this is a diversity case, we apply the law of the forum state, which the parties agree is Kentucky. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

## A.

The first issue is whether Thompson has a right of action against Knifley and Knifley Realty for damages caused by their alleged violations of section 330.110 of the Kentucky Revised Statutes. Section 330.110 was passed as part of the Auctioneers License Law of 1962, which is now codified as chapter 330 of the Kentucky Revised Statutes. *See* KRS § 330.010. Auctioneers and auction house operators must be licensed by the state of Kentucky and must abide by the requirements set forth in chapter 330. Section 330.110 prohibits licensees from engaging in various types of conduct and provides for penalties in the event of a violation. Thompson alleges that Knifley and Knifley Realty violated section 330.110(10) and (11) through various misdeeds associated with the auction of the Breedings' property. Subsections (10) and (11) prohibit licensees from engaging in conduct "which demonstrates bad faith, dishonesty, incompetency, or untruthfulness," or "[a]ny other conduct that constitutes improper, fraudulent, dishonest, or negligent dealings," respectively. Because we find that Thompson has no right of action for damages caused by these alleged violations, we need not address the substance of her allegations.

Thompson argues that section 446.070 of the Kentucky Revised Statutes provides a mechanism that allows her to sue Knifley and Knifley Realty for their alleged violations of section 330.110. Section 446.070 provides:

A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

Knifley and Knifley Realty argue, and the magistrate held, that section 330.110 is a "regulatory" statute for which there is no private right of action. For that proposition they rely exclusively upon *Lewis v. Charolais Corporation*, 19 S.W.3d 671, 674 (Ky. App. 2000), in which the Kentucky Court of Appeals held that no private right of action existed for violation of chapter 151 of the Kentucky Revised Statutes because that chapter was "regulatory in nature."

While the magistrate's ultimate conclusion was correct, the rationale that he employed in reaching that conclusion is flawed. The issue is not, as the magistrate assumed, whether chapter 330 is "regulatory" in nature, but rather whether section 446.070 affords a private right of action for damages caused by a violation of chapter 330. Therefore, the magistrate's reliance upon *Lewis* is misplaced, as that case never even cites section 446.070.

Nevertheless, our review leads us to the conclusion that Thompson has no right of action against Knifley or Knifley Realty for damages caused by their alleged violations of section 330.110. Section 446.070 "was passed to remove any doubt that might arise as to the right of a person for whose protection a statute was passed to recover for a violation of that statute, where the statute was penal in its nature, or where by its terms the statute did not prescribe a remedy for its enforcement of violation." *Hackney v. Fordson Coal Co.*, 19 S.W.2d 989, 990 (Ky. 1929); *see also Ezell v. Christian Cty.*, 245 F.3d 853, 856 (6th Cir. 2001); *The Travelers Indem. Co.*

*v. Reker*, 100 S.W.3d 756, 762-63 (Ky. 2003); *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 117-18 (Ky. 1988); *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). However, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute," *Grzyb*, 700 S.W.2d at 401, and may not sue under section 446.070.

The Kentucky Supreme Court has carefully limited the applicability of section 446.070 to situations where the statute that was allegedly violated provides no remedy for the aggrieved party. *Compare Travelers*, 100 S.W.3d at 762-63 (section 446.070 inapplicable where the Workers' Compensation Act provides remedies for violations of workers' compensation statutes), *and Grzyb*, 700 S.W.2d at 401 (section 446.070 inapplicable where Chapter 334 of the Kentucky Revised Statutes provides the remedy of filing a complaint with the Kentucky Commission on Human Rights), *with State Farm*, 763 S.W.2d at 118 (section 446.070 provides right of action because the Unfair Claims Settlement Practices Act contains no remedy for the aggrieved party). These principles are consistent with the general rule of statutory construction that "as between legislation of a broad and general nature on the one hand, and legislation dealing minutely with a specific matter on the other hand – the specific shall prevail over the general." *City of Bowling Green v. Bd. of Educ.*, 443 S.W.2d 243, 247 (Ky. App. 1969).

Chapter 330 provides that complaints against licensed auctioneers for violating any section in the chapter are to be made before the Board of Auctioneers, KRS § 330.115, and that if a licensee is found guilty of a violation the Board is authorized to pay damages to the aggrieved party if the

licensee fails to do so, *id.* at § 330.192(2)(a).[2] This is the type of statutory remedy that precludes the operation of section 446.070. Because chapter 330 both "declares the unlawful act and specifies the civil remedy available to the aggrieved party," *Grzyb*, 700 S.W.2d at 401, section 446.070 provides no private right of action to Thompson. Accordingly, summary judgment in favor the defendants was proper.

B.

The second issue is whether the magistrate erred in granting summary judgment for Knifley and Knifley Realty on Thompson's negligence claim. The magistrate held that the open and obvious nature of the wet spot precluded Thompson from demonstrating that any of the defendants owed her a duty with respect to that hazard. We agree. There can be no negligence in the absence of a duty on the part of a defendant and, under Kentucky law, no duty arises with respect to hazards that are open and obvious. *PNC Bank v. Green*, 30 S.W.3d 185, 186 (Ky. 2000); *Rogers v. Prof'l Golfers Ass'n*, 28 S.W.3d 869, 872-73 (Ky. App. 2000). Thompson admitted in her deposition that the wet spot "was obvious . . . to anyone who was looking." This admission is sufficient to defeat her negligence claim. *See Corbin Motor Lodge v. Combs*, 740 S.W.2d 944, 946 (Ky. 1987) (granting summary judgment for defendant where plaintiff admitted that he knew the sidewalk on which he slipped was "slick"); *Rogers*, 28 S.W.3d at 873-74 (granting summary judgment for defendant where the slippery golf course hillside on which plaintiff slipped was open and obvious as a matter of law).

---

[2] Thompson never pursued the remedy provided in chapter 330, and now it appears that this remedy is no longer available. *See* KRS § 330.192(3)(f) ("All the claims for monetary damages or relief . . . must be made in writing on a proof of loss form submitted to the board within six (6) months of the act of the auctioneer giving rise to the loss. Failure to file such claims within the six (6) month period shall bar the claim.").

Thompson's arguments to the contrary are unpersuasive. First, she argues that Kentucky has adopted a comparative fault scheme that makes summary judgment inappropriate at this stage. The doctrine of comparative fault, however, presupposes that a defendant is liable for negligence in the first place – which cannot be demonstrated in this case. Second, Thompson argues that the presence of the young men on the property distracted her and somehow made the hazard less open and obvious. Even assuming, however, that Thompson's attention was distracted away from the wet spot, that does not make the hazard any less open and obvious, nor does it make Knifley or Knifley Realty any more at fault for her fall.

Thompson's negligence claim against Knifley and Knifley Realty also fails for an additional reason: neither Knifley nor Knifley Realty was in control or possession of the Breeding property at the time of Thompson's fall. Where a person has neither title to nor possession of the premises, he cannot be liable for injury resulting from a dangerous condition on the premises. *See Sabiston's Adm'r v. Otis Elevator Co.*, 64 S.W.2d 588, 591 (Ky. App. 1933). Even assuming Knifley or Knifley Realty controlled or possessed the property during the auction, Thompson's fall occurred hours after the auction had ended and the Breedings had resumed control and possession of the property. Therefore, the Breedings are the only ones who could potentially be held liable for negligence, and Thompson has settled her dispute with them.

For the foregoing reasons, the magistrate's grant of summary judgment in favor of Knifley and Knifley Realty is AFFIRMED.