NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0925n.06
Filed: November 21, 2005

No. 04-6481

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TIMOTHY LEE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED PARCEL SERVICE, INC., AND | ) | WESTERN DISTRICT OF KENTUCKY |
| SIEMENS DEMATIC CORPORATION, | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |

**Before: GILMAN and COOK, Circuit Judges; and CARR, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Timothy Lee appeals from a summary judgment

order in favor of United Parcel Service, Inc. (UPS) and Siemens Dematic Corporation (Siemens) in

this personal injury case. UPS contracted with Vanderlande Industries (VI), who then subcontracted

with Delta Electric (Delta), Lee's employer, to install conveyors and electrical wiring throughout

the UPS Hub 2000 Project site (Worldport) near Louisville, Kentucky. Siemens also had a contract

with UPS to install conveyors and wiring at the Worldport. While working as a journeyman

electrician at the site, Lee was injured when he stepped onto a moving conveyor belt installed by

Siemens as he attempted to cross over the conveyor on an improvised stairway.

---

[*]The Honorable James G. Carr, Chief Judge of the Northern District of Ohio, sitting by designation.

Lee argues on appeal that summary judgment was improper as to Siemens because Siemens breached its duty of care when it failed to adequately warn Lee and other employees that the conveyor was moving. As to UPS, Lee argues that summary judgment was improper because the Kentucky Workers' Compensation Act did not immunize UPS from tort liability and because UPS breached its duty to Lee when it ignored complaints about the danger of crossing over the Siemens conveyor. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Lee's job responsibilities

Lee began working for Delta in 2000. Delta was a subcontractor for VI, one of five general contractors that UPS had hired to assist in its construction of the Worldport, a package sorting and handling facility. VI hired Delta to provide the electrical wiring for the conveyors after VI installed them. As a Delta employee, Lee worked as a journeyman electrician. He did not work on the Siemens conveyors, nor did he perform any work for Siemens or its subcontractors. His responsibilities consisted primarily of installing programmable controller units, which are cabinets that contain motors to control the conveyors.

### B. Working conditions at the Worldport

To reach the restroom and break area, Lee had to cross over the Siemens conveyor. Other Delta employees also agreed that crossing the conveyor was the only convenient way to leave the site or to use the restroom. The conveyor was two to three feet off the ground and had two four-inch wide parallel belts. Its total width was approximately three feet, and the conveyor had a light-

colored belt and a white frame. When operating, the conveyor ran at a speed of approximately 5 meters, or 16.4 feet, per second.

Lee, UPS, and Siemens all agree that someone had stacked loose pieces of wood near the conveyor to create a makeshift stairway to facilitate crossing over the conveyor, although the parties dispute who was responsible for the structure. Workers in the area often used this makeshift stairway. Lee and other Delta employees working at the Worldport facility also agreed that conditions in the facility made it difficult to determine whether the conveyors were moving. Donnie Smith, a Delta foreman, was asked about this point in his deposition:

> Q:    Could you tell when those conveyors were on by looking at the belts?
> A:    No, you could not see the belt moving. It was a clear white belt, the lights was [sic] bad, you could not see that belt moving.
> Q:    Could you hear it?
> A:    No, because there was [sic] conveyors above the grading that were running, and you couldn't—there was so much noise in that area you couldn't really tell what was running and what wasn't.

Lee and Smith both testified that poor lighting in the area contributed to the difficulty. In addition, there were no controls available for the employees to turn the conveyors off in an emergency.

## C.    Lee's injury

On the day of his accident, Lee crossed the Siemens conveyor once without incident. The conveyor belt was not moving at the time, and the makeshift stairway held in place. Lee, in fact, thought that the conveyor was still under construction because there was debris on and around it. As a result, when he attempted to cross the conveyor later that day, he did not even check to see if the belt was moving before he crossed. Lee claims that he never heard a warning horn, the sound that was supposed to indicate that the conveyor was being turned on. When Lee attempted to cross

the conveyor on this second occasion, the stacked wood pieces that comprised the makeshift stairway began to wobble. Lee, in an effort to catch himself, stepped onto the conveyor. Unbeknownst to him, the conveyor belt was moving, and it threw him onto the floor.

Scott Buchanan, a coworker of Lee's who had crossed just before him, rushed to his aid. Lee, according to Buchanan, appeared shaken but not seriously injured. After Lee's fall, Lee and Buchanan walked together to the portable restroom, located a few hundred feet away from the job site. Lee went to an urgent care facility later that day. An examination revealed back, neck, shoulder, and leg injuries as a result of the fall, but he returned to work the following day with only minor limitations. Three weeks later, however, Lee received a second opinion from a doctor who recommended that he be placed on a light-duty restriction. Because Delta had no light-duty work for Lee to do, he lost his job.

**D.      Siemens's knowledge, possession, and control of the conveyors**

On the day that Lee was injured, he was installing new conveyors in an area above a set of conveyors that were manufactured and installed by Siemens. Lee testified that Siemens employees were in the area that day, and Volker Wetzel, a project manager for Siemens, admitted that he "walked" the area almost daily. Wetzel also recognized the danger of stepping onto a moving conveyor belt, because he himself had fallen as a result of doing so while working at the Worldport. Because of the safety concerns associated with the conveyors, Siemens developed "start-up warning" procedures, including flagging the area with "Danger" tape, blasting a handheld air horn, and communicating with the workers in the immediate vicinity. The parties dispute whether a horn was sounded prior to Lee's fall.

**E.      UPS's knowledge, possession, and control of the accident site**

Smith, the Delta foreman, testified in his deposition that he had discussed safety concerns

regarding the conveyor with officials at UPS:

> Q:      Mr. Smith, in the time leading up to Mr. Lee's accident [,] . . . you conducted
>         weekly safety meetings correct?
> A:      Yes.
> Q:      Okay.  Do you recall some of the issues that were addressed in those
>         meetings?
> A:      Yes.  Lighting, no way to cross the conveyor except for—no way to get
>         across the conveyor except for stepping on it.  I believe they were starting the
>         conveyors without sounding the horns, I believe that was an issue.

Smith also discussed with UPS the poor lighting and the potential for injury if the conveyor was

turned on without the workers' knowledge.  UPS safety manager David Stein acknowledged that the

workers could "get hurt" on a moving conveyor belt and admitted that using a wooden platform to

cross the conveyor was dangerous.

## II.  ANALYSIS

**A.      Standard of review**

The district court's grant of summary judgment is reviewed de novo.  *Minadeo v. ICI Paints,*

398 F.3d 751, 756 (6th Cir. 2005).  Summary judgment is proper where there exists no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c).  In considering a motion for summary judgment, the district court must construe the evidence

and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.     The summary judgment order in favor of Siemens**

The district court erroneously stated in its summary judgment order that Siemens and Lee had stipulated to a licensor/licensee relationship. A licensor/licensee relationship is based upon premises liability, which generally applies only if Siemens had possession of or title to the premises on which Lee was injured. *See Thompson v. Breeding*, 351 F.3d 732, 738 (6th Cir. 2003) (applying Kentucky law). Siemens's primary argument is that it was not a licensor and thus owed no duty to Lee. Because Siemens neither owned nor controlled the area where the accident took place, this argument has merit. Furthermore, there is no evidence that Siemens constructed the makeshift stairway that wobbled and caused Lee to fall.

Siemens argues in the alternative, however, that it did not breach a duty to Lee even if the relationship is characterized as that of a licensor/licensee. We find this argument also persuasive. Kentucky law defines the relationship between contractors on a project as that of licensor/licensee unless there is a mutual beneficial relationship. *Brauner v. Leutz*, 169 S.W.2d 4, 6 (Ky. Ct. App. 1943) (classifying the relationship between a painter and a builder as that of licensor/licensee where the painter borrowed the builder's scaffolding but offered nothing in return). In the present case, Siemens and Delta, Lee's employer, were both subcontractors on the same Worldport project. No mutually beneficial relationship existed, even though they worked in the same area of the site. As a result, the relationship can be characterized as that of licensor/licensee if we take as true (as we

must for summary judgment purposes) Lee's claim that Siemens was responsible for constructing the makeshift stairway.

The scope of Siemens's duty to Lee, assuming that he was a licensee, is a limited one. A licensor must "abstain from doing any intentional, wilful (and in some jurisdictions gross reckless) act endangering the safety of the licensee," *Brauner*, 169 S.W.2d at 6, and "[t]here is no duty to warn a licensee of any danger or condition which is open and obvious or which should or could be observed by the licensee in the exercise of ordinary care." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. Ct. App. 1996) (holding that homeowners did not breach their duty to a party guest who injured himself when diving into the homeowners' shallow swimming pool because the danger was "readily apparent"); *see also Thompson*, 351 F.3d at 737-38 (holding that a licensor did not breach a duty to the plaintiff because the wet, oily spot that she slipped on was open and obvious, even though she was distracted when she stepped on it).

The district court properly ruled that Siemens did not breach its duty to Lee. Lee never claimed that Siemens intentionally or willfully injured him. The dangerous nature of the makeshift stairway over the conveyor, furthermore, was open and obvious. Construing the evidence in the light most favorable to Lee, we assume that Lee neither heard nor saw that the conveyor belt was running when he stepped onto the conveyor. Lee, however, still knew that he was crossing the conveyor, and he knew that he was crossing the conveyor on a makeshift stairway. Siemens was in no better position than Lee was to appreciate the danger of him doing so.

But Lee argues on appeal that a new burden-shifting approach articulated in *Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431 (Ky. 2003), a slip-and-fall case, precludes summary judgment in

favor of the defendants. Although Siemens argues in its brief that Lee did not raise the *Lanier*

analysis below, Lee did, in fact, mention the case in his response to Siemens's motion for summary

judgment. In *Lanier*, the court held:

> [O]nce the plaintiff establishes that he or she fell as a result of a transitory foreign
> substance, a rebuttable presumption of negligence arises. At that point, the burden
> shifts to the defendant to show by the greater weight of the evidence that it exercised
> reasonable care in the maintenance of the premises under the circumstances.

*Lanier*, 99 S.W.3d at 435 (citation omitted). Lee claims, on the basis of *Lanier*, that his case should

have survived summary judgment because Siemens did not meet its burden of proving that it

exercised reasonable care.

Although the *Lanier* court did articulate a new burden-shifting rule, *Lanier* is both factually

and legally distinguishable from the present case. Wal-Mart, the defendant in *Lanier*, is a business

invitor that owed a greater duty to its customers than Siemens owed to Lee. *See McNay v. Shell's*

*Seafood Restaurants, Inc.*, No. 2003-CA-001958-MR, 2005 WL 384547 at *3 (Ky. Ct. App. Feb.

18, 2005) (unpublished) (holding that "[t]he application of *Lanier* is limited to slip and fall cases

brought by business invitees who have been injured as a result of slipping on a foreign substance").

The plaintiff in *Lanier*, moreover, did not see the clear, slippery substance that caused her to fall,

99 S.W.3d. at 435, so there was no discussion of the "open and obvious" doctrine. In contrast, Lee

not only knew of the conveyor and its potential danger, but also admitted in his deposition that he

would have used the makeshift stairway to cross the conveyor even if he had known that the belt was

moving. This distinction is critical, because the *Lanier* court noted: "Presumably, had the customer

had personal knowledge of the presence of the substance/object before the accident, [the customer] would not have stepped on it." *Id.* at 434.

Lee further argues that the open-and-obvious doctrine is outdated given the holdings in *Lanier*, *Wallingford v. Kroger Co.*, 761 S.W.2d 621 (Ky. Ct. App. 1989), and *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364 (Ky. 2005). As discussed above, however, the *Lanier* decision did not involve an open and obvious hazard. Lee's reliance on *Wallingford* is similarly misplaced. The deliveryman in *Wallingford* was injured after Kroger refused to clear the icy path he normally used, or to allow him to use another entrance. His injury occurred when he attempted to clear the path himself. *Wallingford*, 761 S.W.2d. at 624. The *Wallingford* court allowed recovery, but it cautioned that its holding does not permit someone "to walk blindly into dangers that are obvious, known to him, or would be anticipated by one of ordinary prudence." *Id.* (citations omitted). Unlike the deliveryman in *Wallingford*, Lee took no precautions to avoid the open and obvious danger he faced.

*Horne* is similarly distinguishable. In *Horne*, the plaintiff was a customer who tripped and fell on a concrete parking barrier in an auto dealer's parking lot, injuring his wrist. *Horne*, 170 S.W.3d at 365-66. The court held that the parking barrier was not an open and obvious danger because an employee of the auto dealer had improperly parked a car in front of it. *Id.* at 370. In dicta, the *Horne* court also commented that even if the danger was open and obvious, the auto dealer could still be liable because it should have anticipated that the plaintiff was too distracted by the salesperson's conversation to notice the barrier or to protect himself from it. *Id.*

*Horne* does not control the outcome in Lee's case. While the parking barrier in *Horne* was at least partially concealed from the plaintiff's view, the makeshift stairway over the conveyor was open and obvious to Lee. Lee had worked at the Worldport for nearly two years before the accident, and he frequently crossed the conveyor. The court in *Horne* relied in part on the fact that Horne was distracted, and that the nature of auto sales, with its constant banter between salespersons and customers, led to such distraction. *Id.* In the present case, Lee could have checked to see if the conveyor was moving before stepping over it, and he had no reason to be distracted while doing so.

Finally, Lee fails to establish causation. Regardless of the scope of Siemens's duty or any breach thereof, Lee still would have suffered injury under the circumstances. Although Lee claims that he did not realize that the conveyor was moving or hear any warning signal, he also admits in his deposition that he would have crossed anyway:

> Q:     [W]ould you have crossed the conveyor anyhow if you knew it was moving?
> A:     Yes.
> Q:     Okay . . . . you would have crossed it if you — if you had been warned that
>        it was moving?
> A:     Yes.

Lee's failure to establish causation precludes his recovery despite whatever duty Siemens might have owed him. *See Cremeans ex rel. Cremeans v. Speedway SuperAmerica, LLC*, No. Civ. A. 04-343-KSF, 2005 WL 1883662, at *2 (E.D. Ky. Aug. 9, 2005) (holding that even if the plaintiff had proven that the danger was not open and obvious, the failure to establish causation between a defective door and his smashed finger was fatal to the plaintiff's claim). The district court in *Cremeans* also applied the open and obvious doctrine, signaling that the doctrine survives *Lanier*. *Id.* at *4. Because Lee failed to establish causation, and because Siemens had no duty to warn him

of the obvious danger of crossing the conveyor on a makeshift stairway, we affirm the grant of summary judgment to Siemens.

**C.      The summary judgment order in favor of UPS**

Lee also argues on appeal that the summary judgment order in favor of UPS was improper because, under *Lanier*, once Lee has proven that crossing over the conveyor was dangerous and that it was a substantial factor in causing his injury, the burden shifts to UPS to prove an absence of negligence. In response, UPS claims that it had no duty either to warn or to protect Lee because the makeshift stairway over the conveyor belt was an open and obvious danger.  UPS argues in the alternative that  it is immune from tort liability under the Kentucky Workers' Compensation Act as an "up-the-ladder employer."  *See* Ky. Rev. Stat. §§ 342.610, 342.690 (West 2003).  Because Lee collected workers' compensation benefits, moreover, UPS claims that Lee waived his right to seek damages in tort from UPS.  *See id.* § 342.690(1).

As discussed above, *Lanier* is not controlling in the present case.  Lee must therefore prove that UPS breached its duty to Lee and that the breach caused his injury.  UPS's relationship with Lee is clearly one of invitor/invitee because UPS, unlike Siemens, owned the premises on which Lee was injured.  The scope of the duty to invitees in Kentucky requires an invitor such as UPS to "discover the existence of dangerous conditions on its premises and either correct them or warn of them." *Johnson v. Lone Star Steakhouse & Saloon of Ky., Inc.*, 997 S.W.2d 490, 492 (Ky. Ct. App. 1999) (discussing the duty of an invitor under Kentucky law).  An invitor's duty to protect or warn invitees of dangerous conditions, however, does not encompass dangers that are open and obvious. *See id.*, (precluding recovery for a plaintiff who slipped on peanut shells because the shells on the

restaurant's floor were open and obvious and because an invitor's duty does not require "precaution or even warning" against such dangers).   As explained  above, the makeshift stairway over the conveyor was an open and obvious danger.

UPS therefore had no duty to warn Lee or to protect him from the moving conveyor belt, because UPS was in no better position than Lee to appreciate the danger.  In light of our holding that UPS did not breach its duty to Lee, we need not reach the issues of immunity  and waiver under the Kentucky Workers' Compensation Act.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.