OPINION OF THE COURT BY JUSTICE VANMETER
By order entered August 17, 2017, this Court granted the United States District Court, Western District of Kentucky's request for certification of law on the following issue:
May a plaintiff bring a private right of action under KRS[1 ] 446.070 against an employer for an alleged violation of KRS 341.990(6)(a), Kentucky's criminal prohibition against making false statements during unemployment proceedings?
After careful consideration, we hold that such an action is cognizable in Kentucky.
KRS 446.070, commonly known as Kentucky's negligence per se statute, provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Plaintiff Logan Hickey alleges that after General Electric Company ("GE") failed to accommodate his disability and terminated his employment, it falsely told Kentucky authorities that he had voluntarily quit. Because of this alleged misrepresentation, Hickey claims his application for benefits initially was denied, and he was deprived of unemployment benefits for some period. After successive appeals, *21 Hickey was awarded full benefits ultimately.
Hickey brought suit against GE in Jefferson Circuit Court, seeking redress for the harm he suffered due to being temporarily deprived of his unemployment benefits, as well as punitive damages. GE's successor-in-interest, Haier U.S. Appliance Solutions, Inc. ("Haier"), the real party-in-interest, timely removed the case to federal court and moved to dismiss Hickey's KRS 446.070 claim for failure to state a cognizable legal claim.[2] Finding this issue to be a novel one in Kentucky, the federal court denied Haier's motion to dismiss, with leave to re-file the motion depending on the outcome of the certified question.
I. Background.
Hickey began working for Haier as a first-shift production line worker in May 2015. During the application process, Hickey represented that he was capable of, and available for, work on any shift. On August 31, 2015, Haier reassigned Hickey to a second-shift position. He worked the second-shift job for several days, but then ceased, claiming that his medication regimen for Attention Deficit/Hyperactivity Disorder ("ADHD") was causing side effects that interfered with his ability to work in the afternoon. After consulting with his doctor, Hickey requested through Haier's human resources department that he be placed back on first-shift work. Hickey presented a letter from his doctor explaining the impact shift change would have on his current medication regimen and the possible consequences if the medication was not taken.
Haier explained to Hickey that no first-shift work was available to which he could be assigned under the terms of a labor agreement, placed him on an unpaid leave of absence, and said it would notify him if first-shift work became available. Hickey claims that Haier gave him a choice: he could either change his medication regimen and resume working second shift, or resign. Eventually, Hickey received a letter from Haier dated October 6, 2015 informing him that his employment was being terminated, effective on that date. By this time, Hickey had been off work for about a month. The letter explained to Hickey that his employment was governed by the Flexible Park Pool agreement between Haier and the union, which required employees in his position to work any shift and rotate positions. The letter noted that Hickey had been advised of this at the time of his employment application and interview.
Thereafter, Hickey sought unemployment insurance benefits through the Kentucky Unemployment Insurance Commission ("Commission"), with an effective date of September 13, 2015. Haier opposed his application for benefits, informing the Kentucky Division of Unemployment Insurance ("Division") that Hickey had voluntarily quit. The Division denied Hickey's application for benefits, and Hickey appealed. A Division referee conducted an administrative hearing, taking testimony from Hickey and a Haier representative. The Haier representative characterized Hickey's departure as a discharge because Hickey had refused to return to his available second-shift position, and Haier could not unilaterally place Hickey on first shift under the terms of the labor contract. Hickey characterized his separation as a termination. Ultimately, the referee denied his application for benefits.
Hickey then appealed to the Commission for a de novo review of the referee's decision. The Commission reversed the referee and held that Hickey had resigned from *22 his employment, but had good cause to do so and was therefore eligible to receive unemployment benefits. Accordingly, the Commission awarded Hickey the unemployment benefits to which he was entitled under the Kentucky Unemployment Compensation Act, KRS Chapter 341 ("the Act").
In October 2016, Hickey filed suit against Haier in Jefferson Circuit Court, asserting various state and federal claims and requesting a jury trial. Among other things, Hickey alleged that Haier wrongfully opposed his unemployment benefits claim and that its representative had incorrectly represented in the unemployment insurance proceeding that Hickey had voluntarily quit. Hickey further alleged that due to Haier's misrepresentation, his claim for benefits was initially denied, and he was deprived of the use of those benefits while proceeding on appeal. Hickey admits that he ultimately received all unemployment benefits to which he was entitled, but seeks damages for the deprivation of the use of these benefits in the intervening months, as well as punitive damages.
KRS 341.990(6)(a) prohibits witnesses from making false statements in the context of an unemployment insurance proceeding:
Any person who knowingly makes a false statement or representation, or who knowingly fails to disclose a material fact to prevent or reduce the payment of benefits to any worker entitled thereto, or to avoid becoming or remaining subject to this chapter, or to avoid or reduce any payment required of an employing unit under this chapter shall be guilty of a Class A misdemeanor unless the liability avoided or attempted to be avoided is one hundred dollars ($100) or more, in which case he shall be guilty of a Class D felony.
Since the unemployment compensation statutory scheme does not provide for a private right of action based upon this false statement provision, Hickey initiated an independent action against Haier pursuant to KRS 446.070 for the alleged violation of KRS 341.990(6)(a). Since Kentucky law is unclear as to whether such a legal claim is cognizable, we granted the federal court's request to certify the law.
II. Analysis.
Haier argues this Court should not extend Or expand KRS 446.070 to allow a collateral attack on a final decision rendered in an administrative unemployment insurance proceeding, emphasizing that the Act provides for a wholly self-contained administrative and judicial process governed by statute. Haier maintains that the statutorily-created process is designed to be stand-alone and includes detailed procedures accompanying the application for unemployment insurance, encompassing an evidentiary hearing with the right to submit evidence and to subpoena and cross-examine witnesses, an administrative appeal to the Commission, and judicial appeals to Circuit Court and the Kentucky Court of Appeals. Haier asserts that judicial proceedings are limited to the appellate process spelled out in the Act itself, and the allowance of an independent cause of action under KRS 341.990(6)(a) would in effect destroy the finality of unemployment decisions by allowing dissatisfied claimants and/or employers to reopen and re-litigate their unemployment benefits claims in a new forum with a different decision-maker applying a different set of rules in the hopes of achieving a different result or obtaining additional remedies outside of KRS Chapter 341.
Haier states that as with any judicial or quasi-judicial process, inevitably, factual disputes will arise. See *23 Miller v. Ky. Unemp't Ins. Comm'n, 425 S.W.3d 92, 100 (Ky. App. 2013) (disputed fact in claimant's application for benefits with respect to whether she voluntarily left employment was a credibility determination and properly addressed through the appeals process set forth in the administrative framework). Haier contends that Hickey's disagreement with its characterization of his separation from employment was simply a disputed fact to be resolved by the referee, and did not necessarily mean that one party lied or made knowing misrepresentations during the proceeding. Furthermore, Haier asserts that the Act provides a claimant with the opportunity to remedy any purported misrepresentation in the proceedings; here, Hickey had the chance to present evidence and cross-examine Haier's representative with respect to any alleged false statement or misrepresentation. The referee, as fact-finder, was charged with making a credibility determination, and its findings were reviewable on appeal. Haier points Out that Hickey failed to allege any misrepresentation or perjury on appeal. Haier argues that the losing party (or in Hickey's case, the prevailing party) is not entitled to a do-over through an independent cause of action in circuit court under KRS 446.070. Once the employment decision is final, through either exhaustion or abandonment of appeals, Haier maintains the outcome has the effect of res judicata.
Haier presents another potential ramification of allowing a KRS 446.070 cause of action for an alleged violation of KRS 341.990(6)(a) : an action for damages under KRS 446.070 for violation of a statutory right is subject to the five-year statute of limitations in KRS 413.120(2). Pike v. Harold (Chubby) Baird Gate Co., 705 S.W.2d 947, 948 (Ky. App. 1986). Thus, Haier asserts that recognizing a claim for damages in violation of KRS 341.990 Via KRS 446.070 would result in a situation in which an aggrieved party could initiate a collateral attack on an unemployment insurance benefits determination up to five years after a final decision was rendered. Allowing such a delayed attack on the final decision of an unemployment benefits proceeding would negate the intended finality of it.
Conversely, Hickey points to the consequential economic damages that a worker suffers for an employer's wrongful opposition to unemployment benefits that the administrative scheme simply does not address, and argues that the faultless employee should not have to endure financial hardship when subsistence benefits are opposed in bad faith. He asserts that allowing an independent KRS 446.070 claim would not duplicate any recovery from the administrative action and, from a public policy perspective, not recognizing an independent KRS 446.070 claim would result in no monetary risk being associated with an employer's bad faith opposition to a worker's claim, thereby incentivizing employers to wrongfully interfere with these benefits.
Through KRS 446.070, "Kentucky has codified the common law negligence per se doctrine and created an avenue by which an individual may seek relief even where a statute does not specifically provide a private remedy." Vanhook v. Somerset Health Facilities, LP, 67 F.Supp.3d 810, 817 (E.D. Ky. 2014). "The negligence per se doctrine, codified through section 446.070, does not depend on a grant of a private right of action, express or implied, from the statute providing the standard of care." Id. at 819. Instead, KRS 446.070
creates a private right of action under which a damaged party may sue for a violation of a statutory standard of care, provided that three prerequisites are met: first , the statute in question must *24 be penal in nature or provide no inclusive civil remedy; second, the party [must be] within the class of persons the statute is intended to protect; and third, the plaintiff's injury must be of the type that the statute was designed to prevent.
Id. (emphasis added) (internal quotations and citations omitted); see also Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985) (eligibility is limited to "where the statute is penal in nature, or where by its terms the statute does not prescribe the remedy for its violation[ ]").
In Vanhook, the court recognized a private right of action under KRS 446.070 for an alleged violation of a criminal abuse statute, KRS 508.090, finding that the statute did not prescribe a civil remedy, the plaintiff was within the class of persons the statute was designed to protect, and she alleged injuries resulting from the abuse. 67 F.Supp.3d at 820-21. The Vanhook court acknowledged that " '[t]he Kentucky Supreme Court has carefully limited the applicability of section 446.070 to situations where the statute that was allegedly violated provides no remedy for the aggrieved party.' " Id. at 822 (quoting Thompson v. Breeding, 351 F.3d 732, 737 (6th Cir. 2003) ) (negligence per se claim not actionable for violation of auctioneering standards, when statute provided mechanism for making consumer complaints and assessing fines against licensed auctioneers); compare Travelers Indem. Co. v. Reker, 100 S.W.3d 756, 762-63 (Ky. 2003) ( section 446.070 not applicable when Workers' Compensation Act provides an exclusive remedy for violations of workers' compensation statutes), and Grzyb, 700 S.W.2d at 401 ( section 446.070 not applicable for wrongful discharge claim, when KRS Chapter 334 provides remedy of filing complaint with Kentucky Commission on Human Rights), with State Farm Mut. Auto Ins. Co. v. Reeder, 763 S.W.2d 116, 117 (Ky. 1988) ( section 446.070 provides a cause of action since the Kentucky Unfair Claims Settlement Practices Act contains no remedy for an aggrieved party), and Ezell v. Christian Cnty., 245 F.3d 853, 856 (6th Cir. 2001) ( section 446.070 provides a right of action against County Engineer since the safety statute provided no remedy to the particular aggrieved party, despite the fact that the statute allowed the Cabinet to penalize the County Engineer with fines).
While no Kentucky or federal court has recognized a cause of action under KRS 446.070 for an alleged violation of KRS 341.990(6)(a), courts applying Kentucky law have presumed that KRS 446.070 provides a cause of action for violation of Kentucky's criminal statutes under a variety of circumstances: Readnour v. Gibson, 452 S.W.3d 617, 621 (Ky. App. 2014) (affirming summary judgment for defendants on plaintiff's KRS 446.070 claims for violation of criminal assault, stalking, and abuse statutes, among others, but on basis that plaintiff failed to put on any evidence that he was physically injured as required by those statutes); Ford v. Faller, 439 S.W.3d 173, 177 (Ky. App. 2014) (affirming summary judgment on KRS 446.070 claim for violation of KRS 434.155, which makes it a felony to file a document or lien known to be forged, groundless, or false, since plaintiff failed to show proof of culpable mental state); Pace v. Medco Franklin RE, LLC, No. 1:12-CV-00132, 2013 WL 3233469, at *3 (W.D. Ky. Jun. 25, 2013) ( KRS 446.070 claim for violation of KRS 530.080 survived a motion to dismiss since the plaintiff's decedent was within the class of persons that the penal statute was designed to protect, and the statute provides no civil remedy for its violation); Compton v. City of Harrodsburg, No. 5:12-CV-302-JMH, 2013 WL 1993235, at *2 (E.D. Ky. May 10, 2013) (allowing KRS 446.070 claim for violation *25 of KRS 620.030, Kentucky's criminal child abuse reporting statute, where plaintiff was within class of persons statute was designed to protect).
Unlike the Workers' Compensation Act, Kentucky's unemployment scheme does not contain an exclusivity provision. See generally KRS Chapter 341. Furthermore, the Workers' Compensation Act contains an administrative remedy allowing the ALJ to award costs and fees for bad faith conduct. Ky. Emp'r's Mut. Ins. v. Coleman, 236 S.W.3d 9, 14 (Ky. 2007). Haier points to no comparable remedies in the Unemployment Compensation Act. Thus, Hickey cannot seek redress for Haier's alleged wrongful acts by availing himself of the administrative scheme, because the Unemployment Compensation Act does not provide for the remedy he seeks.
Based on our review of the record and applicable law, Hickey appears to have met the prerequisites to bring a private right of action for Haier's alleged violation of KRS 341.990(6)(a). First, KRS 341.990(6)(a) is penal in nature (it provides criminal liability for its violation), and does not prescribe a civil remedy for an aggrieved party. Second, Hickey falls within the class of persons KRS 341.990(6)(a) was designed to protect: employees. The focus of the Unemployment Insurance Act is the unemployed worker, and the wrongful opposition statute plainly seeks to avoid "prevent[ion] or reduc[tion of] the payment of benefits to any worker entitled thereto[.]" KRS 341.990(6)(a). Third, Hickey's alleged injury, deprivation of unemployment benefits to which he was entitled, is the type of harm that KRS 341.990(6)(a) was designed to prevent. Taking Hickey's allegations as true, which a court must do on a motion to dismiss, Hickey has sufficiently pleaded tangible damages to survive Haier's motion to dismiss. See Fox v. Grayson, 317 S.W.3d 1, 7 (Ky. 2010) (on a motion to dismiss, "the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true[ ]") (internal quotations and citation omitted).
III. Conclusion.
For the foregoing reasons, we conclude that Hickey's KRS 446.070 claim against Haier for an alleged violation of KRS 341.990(6)(a) is cognizable under Kentucky law.
All sitting. All concur.

Kentucky Revised Statutes.

Hereinafter, we will refer to Hickey's employer as Haier.