**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0530n.06
Case No. 19-5092

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Oct 16, 2019

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ADRIANNE POPECK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| RAWLINGS, COMPANY, LLC; | ) | KENTUCKY |
| DEBRA FORD | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: SUTTON, COOK, and THAPAR, Circuit Judges.

COOK, Circuit Judge. After the Rawlings Company fired Adrianne Popeck, she sued for discrimination, retaliation, unpaid wages, and wrongful opposition to her application for unemployment benefits. The district court granted the defendants summary judgment on most of Popeck's claims. We AFFIRM.

**I.**

Rawlings provides accounting and financial services to health insurers. In 2009, Popeck started working for Rawlings as an auditor. In that role, she reviewed health insurance claims, identified inaccurate ones, and re-billed the correct insurance company. At first, she prospered at work. She landed a series of promotions, winning praise, awards, and a management position along the way.

Beginning in 2013, however, things took a turn for the worse. That year, a doctor diagnosed Popeck with irritable bowel syndrome ("IBS"), a digestive disease that caused her severe stomach cramping and sudden diarrhea. Rawlings granted Popeck permission to take intermittent leave under the Family and Medical Leave Act. The intermittent leave allowed Popeck to arrive to work late or leave early when needed to address her IBS symptoms.

The next year, senior managers at Rawlings grew concerned with Popeck's leadership of her team. Popeck's supervisor complained that her team members came in late, took excessive breaks, left early, and generally underperformed. Popeck did not lead by example either; Popeck's supervisor found that she too indulged in "excessive breaks." Concluding that she could not curb her team's poor work habits, Rawlings demoted Popeck from her management position back down to an entry-level auditing position.

Throughout that year, Popeck continued to use intermittent leave under the FMLA, exhausting her annual allotment around November. To help Popeck avoid missing work until her FMLA leave renewed in December, Rawlings invited her to apply for an accommodation under the Americans with Disabilities Act. Popeck's doctor submitted the required paperwork, identifying only one required accommodation: Popeck needed to come in late or leave early when her IBS symptoms flared up. Rawlings approved the accommodation until Popeck could resume FMLA leave.

Popeck's long breaks and absences from work continued to raise eyebrows. In November 2014, Rawlings HR generalist (and defendant here) Debra Ford sent Popeck a formal notice of disciplinary action, stating that Popeck had "accumulated excessive instances of tardiness and leaving early." Within a five-week period, the notice explained, she arrived to work late or

departed early fourteen times. Popeck attributed her absences to various mishaps and personal pursuits (oversleeping, traffic, trick-or-treating with a friend's child, etc.), none involving her IBS.

Popeck switched back to taking intermittent FMLA leave in December 2014. The following year, Popeck's work performance dwindled. She failed to meet her performance goal in all but two months. That year, Popeck exhausted her FMLA leave by July. She again sought an ADA accommodation as a bridge until her next period of FMLA eligibility. This time, however, Rawlings denied the proposed accommodation.

Despite lacking sick leave, annual leave, FMLA leave, and ADA leave, Popeck started missing work more than ever. In September 2015, Ford issued Popeck a second formal notice of disciplinary action. According to Ford, Popeck's doctor said that she "may need to come in late or leave early on occasion" and made no mention of any need for full-day absences. The disciplinary notice then stated that Popeck exceeded her annual FMLA leave by using all available 60 days and then accumulating an additional 33 days of absences, "resulting in a 59% absenteeism rate." Ford warned Popeck that she could miss no more work until she either accrued leave or her FMLA eligibility renewed.

In November, Ford sent Popeck an email again admonishing her for taking lengthy breaks and arriving to work late. Ford told Popeck: "This is your final warning." Over the next several weeks, Popeck got to work late four more times. The fourth time, Rawlings fired her, citing her serial tardiness.

Popeck sued Rawlings and Ford, alleging that they violated: (1) the ADA and its Kentucky state-law counterpart; (2) the FMLA; (3) Ky. Rev. Stat. Ann. § 341.990(6)(a), a Kentucky statute prohibiting wrongful opposition to an application for unemployment benefits; and (4) the Fair

Labor Standards Act and its state-law counterpart. The district court granted summary judgment to the defendants on all claims except for one of Popeck's FLSA claims. Popeck appeals.

**II.**

We review the district court's grant of summary judgment de novo, viewing the entire record in a light most favorable to the party opposing summary judgment and drawing all reasonable factual inferences in that party's favor. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476 (6th Cir. 2010). An entry of summary judgment stands only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**A. ADA Claims**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Popeck brings three claims under the ADA: disparate treatment, failure to accommodate, and failure to engage in the interactive process. All three claims require her to show that she is a "qualified individual." *See Terre v. Hopson*, 708 F. App'x 221, 228 (6th Cir. 2017) (disparate treatment); *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (failure to accommodate); *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (failure to engage in the interactive process).

Under the ADA, "qualified" means the ability to "perform the essential functions" of a job "with or without reasonable accommodation." 42 U.S.C. § 12111(8). A "reasonable accommodation" may include "job restructuring [and] part-time or modified work schedules." *Id.* § 12111(9)(B). But no employer need excuse a disabled employee's performance of a job's "essential functions"; a proposed accommodation requesting the removal of an essential function is per se unreasonable. *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998).

Because regular, in-person attendance constitutes an essential function of most jobs, an employee who cannot meet a job's attendance requirements usually cannot establish qualified-individual status. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761–63 (6th Cir. 2015) (en banc). To determine whether Popeck can show qualified-individual status despite her inability to attend work regularly and in person, we ask two questions. We start by asking whether regular, in-person attendance constitutes an essential function for auditors at Rawlings. *See Williams*, 847 F.3d at 391. If so, we then ask whether Popeck proposed a reasonable accommodation that would enable her to perform that function. *See id.* at 393; *Ford Motor*, 782 F.3d at 763.

### 1. Regular, In-Person Attendance

At Rawlings, auditors primarily review and audit healthcare claims. Auditors access information about those claims from secure computers in Rawlings's offices. Rawlings prohibits auditors from working remotely because of the "large volume of confidential and HIPAA protected personal information" in the claims they review. Popeck does not dispute those facts. Because all auditing work must be done on-site, in-person attendance on a regular basis constitutes an essential function of Popeck's job.

Pointing to other employees that Rawlings allows to work remotely, Popeck sees a factual dispute about whether in-person attendance constitutes an essential function. But Popeck ignores a key difference: Those other employees work in IT, not auditing. Rawlings occasionally permits certain IT workers remote access from home during nights and weekends. Rawlings has never allowed auditors accessing confidential information, like Popeck, to work remotely. Popeck's inapt comparison creates no genuine dispute of fact.

**2. Reasonable Accommodation**

We turn to whether Popeck proposed a reasonable accommodation that would enable her to attend work in person regularly. *See Ford Motor*, 782 F.3d at 763. In *Ford Motor*, we held the IBS-afflicted plaintiff's proposed accommodation—working from home for up to four days a week—unreasonable because it was tantamount to an exemption from the regular, in-person attendance requirement. *Id.*

Here, Popeck proposes an accommodation that seems more modest on its face: occasional flexibility to arrive late and leave early when her IBS symptoms flare. Even assuming (contrafactually) that Popeck's IBS caused all of her tardiness, early departure, excessive break-taking, and full-day absences, authorizing Popeck to arrive late or leave early on occasion would not have come close to solving her attendance problem. Recall that by the end of her employment, Popeck missed work nearly 60% of the time. Because she evidently requires vastly more flexibility and time off than she proposes, Popeck fails to suggest an accommodation that would enable her to attend work in person regularly. *See Williams*, 847 F.3d at 393–94. She thus cannot establish that she remains "qualified" for her job. *Ford Motor*, 782 F.3d at 761. Absent such a showing, Popeck cannot sustain her ADA claims. The district court correctly granted summary judgment to the defendants on those claims.

**B. Confidentiality Violation under the ADA**

Popeck argues that she brought a claim alleging that Rawlings violated the ADA's confidentiality provisions and that the district court erred in failing to consider it. Rawlings responds that Popeck brought no such claim because she raised the confidentiality provisions for the first time in moving for summary judgment.

Popeck's complaint only off-handedly mentions the ADA's confidentiality provisions. She alleges that Rawlings employees reviewed her "confidential FMLA and ADA paperwork," that Popeck did not authorize this, and that those alleged actions "violate[d] the company's confidentiality policies." Those allegations address Rawlings's purported violation of its *internal* policies, not the ADA's confidentiality provisions. Besides, Popeck presents those allegations during the general narrative portion of her complaint; she fails to link them to any specific claim. The oblique reference to confidential ADA paperwork did not notify the defendants of a standalone claim founded on the ADA's confidentiality provisions. Parties may not obtain relief on legal claims raised for the first time in summary judgment briefings, so we will not consider Popeck's argument here. *See Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 789 (6th Cir. 2005).

### C. FMLA Interference Claim

The FMLA forbids employers' interfering with an entitled employee's exercise of rights under the act. 29 U.S.C. § 2615(a)(1). In the district court, Popeck advanced multiple theories of how Rawlings interfered with her FMLA rights. But her opening brief discusses only one theory, thereby abandoning the others. *See Gehrisch v. Chubb Grp. of Ins. Cos.*, 645 F. App'x 488, 494 (6th Cir. 2016).

Popeck argues that Rawlings violated its regulatory duty to designate certain instances of leave as ADA leave rather than FMLA leave. She cites 29 C.F.R. § 825.702, which states that, as between the FMLA and ADA, "[a]n employer must . . . provide leave under whichever statutory provision provides . . . greater rights" to the employee. *Id.* § 825.702(a). But Popeck established no entitlement to ADA leave, so Rawlings had no duty to grant her leave under that statute. The district court correctly rejected Popeck's claim.

**D. Retaliation Claims**

Popeck alleges that Rawlings retaliated against her—by demoting and then firing her—for engaging in protected activity under the ADA and the FMLA. To establish a prima facie case of retaliation, Popeck must show: (1) she availed herself of a protected right; (2) Rawlings knew she was doing so; (3) she suffered an adverse employment decision; and (4) a causal connection existed between Popeck's invocation of her rights and Rawlings's adverse action. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (FMLA); *Hibbler v. Reg'l Med. Ctr. at Memphis*, 12 F. App'x 336, 340 (6th Cir. 2001) (ADA).

If Popeck makes this prima facie showing, Rawlings must then produce a legitimate, nondiscriminatory reason for its actions. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). If Rawlings offers that explanation, Popeck needs to show that Rawlings's reason serves only as "a pretext to hide unlawful retaliation." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007).

Even if Popeck established a prima facie case, Rawlings put forward legitimate, nondiscriminatory reasons for demoting and firing her. Rawlings demoted Popeck because her excessive breaks during the workday interfered with her leadership of her team. During her demotion meeting, Popeck did not deny that she took excessive breaks or suggest that the breaks related to her IBS. Her supervisor explained that he "decided to demote [Popeck] based on her frequent, extended breaks, which caused her to be unable to fulfill her leadership duties as a Team Lead." Rawlings thus had a legitimate reason for demoting Popeck. *See Bowie v. Advanced Ceramics Corp.*, 72 F. App'x 258, 263 (6th Cir. 2003) (concluding that lack of leadership and inappropriate on-the-job breaks constitute legitime grounds for demotion).

Same goes for Rawlings's decision to dismiss Popeck for her serial tardiness. Again, that's a legitimate, nondiscriminatory reason for termination. *See Cecil v. Louisville Water Co.*, 301 F. App'x 490, 502 (6th Cir. 2008). Popeck submitted no evidence challenging the record of her tardiness or suggesting that her tardiness resulted solely from her IBS.

Popeck contends that Rawlings's proffered reasons amount to mere pretext. As to her demotion, Popeck points to evidence that the company does not strictly enforce its break policies and that other nondisabled workers took excessive breaks without consequence. That argument, though, does not address the crux of Rawlings's proffered reason for demoting Popeck: her ineffective leadership of her team. Even if Rawlings tolerated excessive breaks from other employees, Popeck provides no evidence that Rawlings tolerated inadequate leadership from other team leaders. She fails to rebut Rawlings's legitimate, nondiscriminatory reason for her demotion.

As to her termination, Popeck charges Rawlings with a "shifting" rationale, suggesting that Rawlings's proffered reason acted as cover for something else. But Rawlings's reason has not changed: it repeatedly told Popeck that she would suffer disciplinary action "up to and including termination" for continued "tardiness." When Rawlings fired Popeck, it contemporaneously cited her tardiness. We discern no shifting rationales that put Rawlings's proffered reason in doubt. The district court correctly granted summary judgment to the defendants on Popeck's retaliation claims.

### E. Interference with Unemployment Benefits Claim

After Rawlings fired her, Popeck applied for unemployment benefits. In her application, she alleged that Rawlings fired her because it refused to accommodate her disability. Ford, on behalf of Rawlings, responded to Popeck's unemployment application, asserting that the company fired Popeck because of her absenteeism, tardiness, and excessive breaks. Ford also represented

that Popeck submitted no paperwork establishing a disability, so Rawlings had no duty to accommodate her.

Popeck contends that the portion of Ford's response about Popeck's disability paperwork constitutes a false statement to the Kentucky Division of Unemployment Insurance, violating Ky. Rev. Stat. Ann. § 341.990(6)(a). That statute provides that "[a]ny person who knowingly makes a false statement or representation . . . to prevent or reduce the payment of benefits to any worker entitled thereto . . . [is] guilty of [a felony or misdemeanor, depending on the amount withheld]." Ky. Rev. Stat. Ann. § 341.990(6)(a). The Kentucky Supreme Court has held that this ostensibly criminal statute (in combination with another state statute) creates a private right of action for claimants against purveyors of false information when the false information leads to denial of benefits. *See Hickey v. Gen. Elec. Co.*, 539 S.W.3d 19, 25 (Ky. 2018).

Popeck argues that Rawlings and Ford violated this statute when Ford submitted paperwork stating that Popeck "has not submitted paperwork establishing a disability." To survive summary judgment, Popeck must cite facts suggesting that Ford offered the disputed statement with the intention of preventing Popeck from receiving unemployment benefits. *See* Ky. Rev. Stat. Ann. § 341.990(6)(a). To that end, Popeck points to a smattering of circumstantial evidence: Rawlings granted her ADA leave in 2014 after Popeck submitted similar paperwork, Popeck asked to have her disability matters handled by a different HR generalist, Ford failed to attend the state agency hearing that determined Popeck's right to benefits, Rawlings did not contest the benefits of another worker fired for misconduct, and so on. In the aggregate, Popeck contends, she has proffered enough evidence to warrant putting the issue of Ford's and Rawlings's intent to a jury. Her offering of irrelevant and nonprobative facts, however, fails to move the needle; Popeck cites no evidence from which a reasonable jury could conclude that Ford sought to prevent Popeck

receiving benefits. Indeed, the only direct evidence of Ford's intent stands unrebutted: Popeck's doctor certified that Popeck's IBS caused no substantial limitation to a major life activity (a necessary showing to qualify for ADA protection), Ford testified in her deposition that she relied on the doctor's certification in determining that Popeck's paperwork did not establish a disability, and Ford "believed the statements to be true[.]" The district court correctly granted summary judgment to the defendants on this claim.

### F. Popeck's Other Claims

In the district court, Popeck also asserted claims under the Kentucky Wage and Hour Act, the Kentucky Civil Rights Act, the FLSA, and sought a declaration that Rawlings had forfeited its overtime exemption. Having failed to make any reference in her opening brief to any of these claims, Popeck abandoned them. *Gehrisch*, 645 F. App'x at 494.

### III.

We **AFFIRM**.