RENDERED: OCTOBER 17, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0627-MR

MIRANDA STOVALL AND NOOR
FADEL                                                          APPELLANTS

APPEAL FROM FAYETTE CIRCUIT COURT
v.         HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 24-CI-00761

KY120 UNITED AFT AND NEMA
BREWER                                                          APPELLEES

AND

NO. 2024-CA-0648-MR

KY120 UNITED AFT AND NEMA
BREWER                                                  CROSS-APPELLANTS

CROSS-APPEAL FROM FAYETTE CIRCUIT COURT
v.         HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 24-CI-00761

MIRANDA STOVALL AND NOOR
FADEL                                                  CROSS-APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE:  These two appeals stem from a complaint filed by Miranda Stovall and Noor Fadel (collectively "the Appellants")[1] against Nema Brewer ("Brewer") and KY120 United AFT ("KY120") (collectively "the Appellees"). The Appellants are residents of Louisville whose children attended Jefferson County Public Schools in February of 2019.  The Appellants filed suit seeking damages from the Appellees for advocating a "sickout"[2] by public-school teachers which occurred on February 28, 2019.

In appeal No. 2024-CA-0627-MR, the Appellants argue the circuit court erred in dismissing their Complaint based upon conclusions that the Complaint was time-barred and that Appellees' actions were protected by the First

---

[1] We note that a class action was contemplated, but the case never got to the point of deciding about class certification.  We have examined the case understanding the representative capacity of the Appellants and the need for their claims to be sustainable before a class certification would have been evaluated.  Because of the reasoning behind our following resolution of the claims made by the Appellants, we need not address the class status further.

[2] As the name implies, a sickout results when a large enough number of individual employees claim one of the sick days allowed by their employers, even though the employee may not meet the requirements for using a sick day.  Because of a lack of staff, the employer closes for that day.

-2-

Amendment and the Uniform Public Expression Protection Act ("UPEPA"), KRS[3] 454.460 *et seq.* In appeal No. 2024-CA-0648-MR, the Appellees filed a cross-appeal arguing the circuit court erred by not granting mandatory attorney's fees after the dismissal based in UPEPA. Upon review, we affirm, although for reasons different than those relied upon by the circuit court.[4]

## FACTUAL AND PROCEDURAL HISTORY

KY120 is an association[5] founded in March 2018, originally as a Facebook page for public employees in Kentucky. Brewer was an employee of Fayette County Public Schools and one of the founders of KY120. During the 2018 Regular Session of the Kentucky General Assembly, the Appellees advocated against legislative changes to the Teachers Retirement System in what was referred to by some as the "Sewer Bill."[6]

On March 30, 2018, the Appellees encouraged a sickout of public-school employees in response to the proposed changes to retirement. Twenty-nine school districts across the state closed that day due to lack of teachers. Because of

---

[3] Kentucky Revised Statutes.

[4] "If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) (citation omitted).

[5] KY120 is still an unincorporated association now named KY120 United Fayette, Ltd.

[6] This legislation was later declared unconstitutional. *Bevin v. Commonwealth ex rel. Beshear*, 563 S.W.3d 74 (Ky. 2018).

the applicable statute of limitations, these events are not the subject of damages claimed by the Appellants. We provide a history of the efforts by the Appellees simply as context for what occurred in 2019.

On February 27, 2019, KY120 posted to its private Facebook group that HB 525, a new bill that would have made changes to the Teachers Retirement System, was scheduled to be heard in a General Assembly House committee on February 28, 2019. The Facebook post called for action to protest the changes: "Please call in sick tomorrow and text your co-workers to do the same. We need districts to shut down as early as possible this evening."[7]

According to the Appellants, eight school districts experienced teacher shortages on February 28, 2019, in response to the Appellees' call for action. The Appellants' children attended Jefferson County Public Schools, which was one of the school districts closed that day. The parties do not contest that Jefferson County added an additional day of education at the end of the semester to make up for the February 28 closure as required by law.[8]

Just shy of five years later, on February 27, 2024, the Appellants filed a Complaint[9] against the Appellees asserting two causes of action. The first

---

[7] Complaint, Paragraph 40.

[8] Kentucky Revised Statutes ("KRS") 158.070.

[9] We note the Complaint violates Kentucky Rules of Civil Procedure ("CR") 8.01. It is not "a short and plain statement[.]" It has over 150 numbered paragraphs, is 31 pages in length, and

alleged a breach of KRS 336.130(1), which prohibits public employees from engaging in a strike or other work stoppage.[10] The second alleged a violation of KRS 336.130(2)'s bar on "employees" and "associations, organizations or groups of employees" who "engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion."

Both counts were based on KRS 446.070, which creates a private cause of action for persons injured by the violation of a statute that provides only a penalty and no separate private remedy. The Appellants generally asserted the missed school day "disrupted their professional lives and negatively impacted their children's educational experience."[11] The Appellants sought compensatory and punitive damages.

The Appellees moved to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to CR 12.02(f). Specifically, they argued the Complaint was barred under the one-year statute of limitations for

---

contains a lot of unnecessary commentary, including discussion of legal authorities. The detail provided possibly had an unintended, negative impact for the Appellants because of factual statements made which we find create barriers for the claims made, as will be illustrated by the following discussion.

[10] We need not differentiate in detail between strike or work stoppage. A strike is usually for the purpose of pressuring the employer. A work stoppage is a broader term, which includes strikes. Clearly, at least a work stoppage occurred on February 28, 2019, and we will use that phrase in our analysis.

[11] Complaint, Paragraph 63.

personal injury claims. The Appellants also moved to dismiss the Complaint under UPEPA, arguing their communications on a pending bill constituted protected speech on a matter of public concern. The Appellants asked for attorney's fees and costs under KRS 454.478.

The circuit court entered its Order on Motion to Dismiss granting the Appellees' motion to dismiss. The court held that the Appellants' claims were time-barred by the one-year statute of limitations prescribed in KRS 413.140(1)(a). In its order, the circuit court also held that the Appellees' speech on February 27 and 28, 2019, "is covered by the First Amendment and falls within the definition of speech covered by the UPEPA in KRS 454.462(1)." But the court denied any award of attorney's fees. These appeals follow.

**MOTION TO DISMISS**

**STANDARD OF REVIEW**

This Court has recently explained that a dismissal under "UPEPA is most akin to an expedited motion to dismiss for failure to state a claim upon which relief may be granted or a motion for summary judgment." *Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 150 (Ky. App. 2024). We will review *de novo* the circuit court's decision to grant the Appellants' motion to dismiss under UPEPA. *Id.*

-6-

When reviewing motions to dismiss generally, the circuit court must accept any factual statements in the complaint as true. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010). Dismissal should be granted only if the plaintiff could not succeed on the complaint under any set of facts provable. *Id*. We will consider the limitations question as one subject to a motion to dismiss rather than for summary judgment, recognizing UPEPA cases may involve information in addition to just the contents of a complaint.

## ANALYSIS

We approach this case by first addressing whether the Appellants can state a claim for a violation of KRS 336.130 pursuant to KRS 446.070. We then must decide if they have stated such a claim with evaluation of any limitations bar to the claim. We also must determine the Appellants' standing to make such a claim. This will include analysis of causation for the damages sought. The specific impact of UPEPA will conclude our analysis.

KRS 336.130(1) recognizes a right of employees to strike generally, but with an important exception: "no public employee, collectively or individually, may engage in a strike or a work stoppage." KRS 336.130(2) then provides that individual employees, groups of employees, and associations of employees may not "engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion."

KRS 446.070 states: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." The statute codifies a common law doctrine establishing that breach of a statutory duty may support a claim for injury. The statute dates to legislation enacted just after the adoption of our present state constitution in 1891. *Hargis v. Baize*, 168 S.W.3d 36, 49 n.7 (Ky. 2005). The rule for application of KRS 446.070 is plainly stated: "The statute creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected." 168 S.W.3d at 40.

In some cases, our courts refer to this as a "negligence per se" statute. *Hickey v. General Electric Company*, 539 S.W.3d 19, 20 (Ky. 2018). We tend to think of a negligence claim as based on a breach of duty which causes physical, personal injuries. An example would be a negligence claim against a driver of a vehicle whose breach of duty in the operation of a vehicle causes physical harm. But KRS 446.070 is broader than that.

In *Hickey*, *supra*, the court held that a violation of a statute prohibiting false statements in unemployment benefits proceedings supported a claim for damages resulting from a denial of a claim based on a false statement. *Id*. at 25.

The breadth of KRS 446.070's reach is now well-established. "The injury contemplated by the statute is not confined to personal injury." *Roberts v. Hargis*, 96 S.W.2d 691, 692 (Ky. 1936). *See also Maysville Transit Co. v. Ort*, 177 S.W.2d 369 (Ky. 1943).

Before we move on to discuss the type of injury claimed here, we may eliminate from further discussion two of the other elements for liability under KRS 446.070. There is a penalty for violations of KRS 336.130. KRS 336.985; KRS 336.990(2). The statute is thus sufficiently penal in nature. The KRS chapter within which KRS 336.130 is found provides no civil remedy for statutory violations.

KRS Chapter 336 is entitled "Labor and Employment." The classes of persons regulated and specifically intended to be protected by KRS 336.130 are employees and employers. When an employer terminated employees for legal union activities, the employees had a right to sue for damages under KRS 336.130(1) and KRS 446.070. *Simpson County Steeplechase Ass'n, Inc. v. Roberts*, 898 S.W.2d 523 (Ky. App. 1995). When an individual employee was fired for exercising his rights protected by KRS 336.130, KRS 446.070 was applied to allow a claim for damages against the employer in *Pari-Mutual Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky. 1977).

In *Hackney v. Fordson Coal Co.*, 19 S.W.2d 989 (Ky. 1929), a statute protected mining employees from requirements to buy at a "company store." The predecessor to KRS 446.070 did not give competing store owners the right to sue for damages if employers violated the statute. 19 S.W.2d at 990. While it may have been foreseeable that competing store owners could be harmed by the violation, the statute was intended to regulate conduct only between employers and employees.

It is difficult to see the entire general public as a "class of persons" in the context of KRS 446.070. To be within a "class of people" intended to be protected by KRS 336.130 requires more than the ability to show that the action of employers or employees caused a harm to them. *Hackney, supra*. *See also McCarty v. Covol Fuels No. 2 LLC*, 476 S.W.3d 224 (Ky. 2015) (independent contractor killed while placing a garage door at a mine facility was not intended to be protected by statutes governing safety for mine employees). The clear purpose of the regulatory statute must be to protect the rights of the class claiming damages under its coverage.

Even so, it is not far-fetched to recognize that an illegal work stoppage by school employees could specifically impact students and their parents, who might incur an expense to arrange for childcare because their children are suddenly not going to school. Although we do not believe that the Appellants may claim

-10-

damages for a violation of KRS 336.130 under KRS 446.070, we allow that reasonable minds may differ. Thus, we continue our analysis and find the dismissal of the Appellants' Complaint was still proper.

If the Appellants have a claim, there must be an applicable statute of limitations for such a claim. The circuit court erroneously concluded that the one-year limitation period of KRS 413.140(1)(a) applied. This statute applies to injuries "to the person" of a plaintiff or his or her child. Such claims must involve some physical injury. *See Resthaven Memorial Cemetery v. Volk*, 150 S.W.2d 908, 910 (Ky. 1941). Only when the violation of a statute made actionable by KRS 446.070 results in such a personal injury does KRS 413.140(1)(a) apply. *See, e.g.*, *Toche v. American Watercraft*, 176 S.W.3d 694 (Ky. App. 2005).

This case does not involve such a physical, personal injury. The claim may have been actionable under the common law. But whether as a preexisting common law claim or solely as a result of KRS 336.130, a limitations period other than KRS 413.140(1)(a) must apply. We conclude that the five-year limitation period applies under KRS 413.120(2).[12]

The Kentucky Supreme Court delineated the difference between "injury to the person" and other claims in *Overstreet v. Kindred Nursing Centers*

---

[12] If we agreed that the common law recognized the nature of the claim made by the Appellants and that it was thus not created solely by KRS 336.130, the five-year limitation period would still apply. *See* KRS 413.120(6).

*Limited Partnership*, 479 S.W.3d 69 (Ky. 2015). Violation of some of the statutory provisions governing nursing homes could result in traditional personal injury. Others would not, instead creating liability for harms not connected with physical injury. To these latter claims, the five-year statute applies. *Id*. at 76. *See also*, *Hickey*, *supra*, at 23; *Walker v. Commonwealth*, 503 S.W.3d 165, 172 (Ky. App. 2016).

Having determined that the five-year limitation period applies to the Appellants' claims, we must conclude that the Complaint was not time-barred. We next must evaluate standing to assert the claims. We are required to determine standing even if no one asks us to do so. *Commonwealth, Cabinet for Health & Fam. Servs., Dep't for Medicaid Services v. Sexton ex rel. Appalachian Reg'l Healthcare*, 566 S.W.3d 185, 188 (Ky. 2018). Standing requires an injury *fairly traceable* to the defendant's conduct, and the court must have the power to redress the injury. *Id*. at 195-96 (emphasis added).

The circuit court could redress some of the injuries claimed with an award of damages. But this leaves two distinct problems for the Appellants as to other claims made. First, the injury cannot be "remote and speculative." *Id*. at 194. "The injury must be . . . 'distinct and palpable,' and not 'abstract" or 'conjectural' or 'hypothetical.'" *Id*. at 196 (citations omitted).

-12-

The Appellants make broad assertions of the damage this one missed day did to their children. According to the Appellants' Complaint, the missed school day of February 28, 2019 "negatively affected their children's educational experience."[13] One of the Appellants worries that her child "is too far behind and is running out of time to catch up as a third grader who still struggles to read, write, and do math at grade level."[14]

To claim that a child was so injured because of one missed day of school, which was made up as any weather-related day would be, borders on the fanciful and is certainly speculative. *Cf. Michals v. William T. Watkins Memorial United Methodist Church*, 873 S.W.2d 216 (Ky. App. 1994) (parents' concern about exposure of their children to asbestos while attending school is speculative). Yet we do find one concrete claim which may serve to justify further analysis. This claim[15] is a measurable financial loss to the parents for the cost of childcare on short notice because of the work stoppage. So, we continue our analysis of causation.

To recover, the statutory "violation must have been a substantial factor in causing the result." *Hargis*, 168 S.W.3d at 46. "[T]he violation of the

---

[13] Complaint, Paragraph 63.

[14] Complaint, Paragraph 65.

[15] Complaint, Paragraph 66.

statute must be the proximate cause of the injury to permit recovery." *Est. of Wheeler v. Veal Realtors & Auctioneers, Inc.*, 997 S.W.2d 497, 498 (Ky. App. 1999) (citation omitted). This is consistent with the "fairly traceable" element for standing.

We can assume that the work stoppage caused the Appellants to incur the cost of childcare on the sickout day. But this does not mean that causation by the named Appellees can be shown. We need to take a close look at what precisely KRS 336.130 prohibits and how group or individual actions led to the damages claimed.

KRS 336.130(1) says that employees, individually or as a group, may not "engage" in a work stoppage. KRS 336.130(2) then expands to not just employees but groups and associations of employees as well. It states that they shall not "engage in unfair or illegal acts or practices or resort to violence, intimidation, threats or coercion."

In Jefferson County, the decision was made to close the schools when 1,247 absences were reported with even more expected.[16] While we cannot know the legitimacy of each absence, clearly hundreds if not over a thousand Jefferson County Schools employees engaged in a work stoppage on February 28, 2019.

---

[16] Complaint, Paragraph 21.

-14-

Some of these teachers were associated with KY120.[17] Depending on the provable, Jefferson County numbers, KY120 engaged in an illegal act, a work stoppage. Brewer herself also engaged in a work stoppage with respect to her employment in Fayette County, which of course itself caused no damage to anyone in Jefferson County.

The verbose Complaint includes many of Brewer's statements. She clearly wanted teachers to take a sick day and not show up for work. She wanted to shut down the schools. Yet with respect to one of the sickouts, she also said: "I can't tell you what to do."[18] But she did ask.[19] We will examine the impropriety of asking people to engage in an illegal act when we discuss the UPEPA claim, but it is doubtful that Brewer's *statements alone* were illegal acts under KRS 336.130. Under any definition of a threat or coercion, the postings could hardly be so categorized as directed to the other employees.

---

[17] According to Paragraph 49 of the Complaint, KY120 has over 40,000 members, and over 7,000 Jefferson County Schools employees are members. The record does not disclose how many of the non-reporting employees on February 28, 2019, were KY120 members much less how many of them decided not to report as a direct result of KY120's call as opposed to responding to the request of a fellow employee or some other motivation.

[18] Complaint, Paragraph 22.

[19] The Appellants say that Brewer "aided and abetted" the other teachers harkening to the criminal concept of complicity. We note that a claim of civil conspiracy has been limited to commission of common law torts. It was held not to apply where Kentucky's fraudulent conveyance statutes were violated. *GATX Corp. v. Addington*, 879 F. Supp. 2d 633, 648 (E.D. Ky. 2012). Regardless, it is common action by a group which is prohibited, and which did in fact occur with the work stoppage.

If we look only at the first phrase about engaging in illegal acts, a group of teachers, many of them associated with KY120, did engage in an illegal act—a work stoppage by public employees. If they could be sued for that under KRS 336.130(1) and (2) and KRS 446.070, a real problem of causation or something "fairly traceable" presents itself.

The work stoppage only occurred when a certain number of individual teachers in Jefferson County decided to take a sick day. These were individual decisions. Public policy is not only against illegal acts, but it also recognizes individual responsibility as can be seen in Kentucky's doctrine of comparative fault. If the participating teachers as a group could be liable for engaging in a work stoppage under KRS 336.130, how would liability be assessed under comparative negligence? How many teachers participated when other teachers spread the word rather than through direct communication from Brewer and KY120? Did the one teacher who made the Jefferson County Public School District cross the absentee total line to force the closure have a more causative effect than the others? Frankly, there is no practical way to redress the claim made by assessing responsibility among all those who participated, even if Brewer and the members of KY120 led the way.

Even if the Appellants are within the intended protected class of KRS 336.130, and the claim for childcare expenses is not speculative, the Appellants

cannot establish that the two Appellees were the cause of the work stoppage such that the work stoppage is fairly traceable to them alone: the work stoppage was the result of hundreds of individual decisions not forced upon the deciders by the Appellees. The Complaint was properly dismissed.

## UPEPA

Unfortunately, our work is not done because of the related basis for dismissal offered under UPEPA. UPEPA was designed to prohibit "SLAPP" lawsuits—Strategic Lawsuits Against Public Participation. *Davenport*, *supra*, at 150. SLAPP "lawsuits aim to harass, intimidate or silence those who use their right to petition." *Id.* (internal quotation marks and citation omitted).

Kentucky's version of UPEPA applies to a cause of action asserted against a person based on the person's:

> (a) Communication in a legislative, executive, judicial, administrative, or other governmental proceeding;
>
> (b) Communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or
>
> (c) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, as guaranteed by the United States Constitution or Kentucky Constitution, on a matter of public concern.

KRS 454.462(1).

As previously mentioned, the circuit court held that the Appellees' communications on February 27 and 28, 2019, were "within the definition of speech covered by the UPEPA in KRS 454.462(1)." That is largely, but not completely, correct. Brewer clearly had the right to speak and criticize the legislation under consideration. These communications fit under both KRS 454.462(1)(b) and (c). But there is a fine line which may be crossed when illegal acts are advocated, and which then immediately follow.

Freedom of speech is not absolute. We recognize the rule enunciated in *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 1829, 23 L. Ed. 2d 430, 447 (1969): "[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." But, even if Brewer and KY120 crossed this line, we find that the speculative nature of most of the damages claimed and the causation problems we have discussed still doom the Appellants' claims. Yet a crossing of this fine line of speech and illegal action may still impact the UPEPA claim.

The Facebook posting by the Appellees on February 27, 2019, asked public-school employees to call out sick on February 28. This posting was less about speech and more of a call for action to commit an illegal act. Kentucky

public school teachers commit an illegal act when they participate in a work stoppage. *See Jefferson Cnty. Tchrs. Ass'n v. Bd. of Educ. of Jefferson Cnty.*, 463 S.W.2d 627 (Ky. 1970). "Under the common law, it is well settled that public employees do not have the right to strike or to engage in concerted work stoppages. The right to strike on the part of public employees is not protected by either the Federal or the Kentucky Constitution, nor has the legislature granted such right to public employees." *Bd. of Trs. of Univ. of Kentucky v. Pub. Emp. Council No. 51 Am. Fed'n of State, Cnty. & Mun. Emp., AFL-CIO*, 571 S.W.2d 616, 619 (Ky. 1978) (citation omitted).

There is no question that the individual employees who participated in the sickout could be properly fired for participating in the illegal work stoppage. *See Abney v. City of Winchester*, 558 S.W.2d 622 (Ky. 1977) (firefighters properly dismissed for engaging in a work stoppage). *See also Bates v. Dause*, 502 F.2d 865 (6th Cir. 1974) (school principals could be demoted for encouraging teachers to engage in a work stoppage). Another ground for discharge is presented by the dishonesty of claiming to be sick when the employees were not in fact sick. But these are decisions not belonging to us, but instead to the employers, and these individual decisions raise serious issues of appropriate individual response as well as political considerations which do not belong in court.

**ATTORNEY'S FEES UNDER UPEPA**

On appeal, decisions by the trial court regarding attorney's fees are reviewed for abuse of discretion. *Davenport Extreme Pools & Spas, Inc.*, *supra*, at 160 (citations omitted). "Abuse of discretion occurs when a trial court's decision is unreasonable, unfair, arbitrary or capricious." *Allen v. Eder*, 682 S.W.3d 32, 34 (Ky. App. 2023), *review denied* (Feb. 7, 2024) (internal quotation marks and citation omitted). The reviewing court essentially determines whether the trial court's decision, in light of the facts and the law pertinent to this case, "falls within a range of permissible decisions." *Hazel Enters., LLC v. Ray*, 510 S.W.3d 840, 843 (Ky. App. 2017).

The Appellees' cross-appeal argues the circuit court erred by not granting attorney's fees after the dismissal of the Complaint. After being served with a pleading asserting a cause of action, a party asserting protection under UPEPA may file no later than sixty days after service a special motion for expedited relief to dismiss the action. KRS 454.464. The process includes an opportunity for limited discovery. On a motion concerning this expedited relief, "the court *shall* award court costs, reasonable attorney's fees, and reasonable litigation expenses related to the motion: (1) To the moving party if the moving party prevails on the motion; or (2) To the responding party if the responding party

prevails on the motion and the court finds that the motion was brought without good cause." KRS 454.478 (emphasis added).

This case becomes further complicated because the circuit court ruled first on the limitations issue, which assumed a valid but time-barred claim, and then applied UPEPA almost as an afterthought when the decision had already been announced that the claims were time-barred. It is not clear that the dismissal was because of UPEPA or whether this was just an added reason.

Dismissal under UPEPA is governed by a process outlined in KRS 454.472. The movant must "establish" that KRS 454.462 applies. Even when this is established, a showing must be made that the responding party failed to state a cause of action.

From this record we must conclude that the UPEPA motion should have been denied. While the Appellants may very well have acted out of a desire to silence Brewer, they also made a reasonable case that Brewer and the members of KY120 engaged in an illegal work stoppage and that the Appellants were harmed by the illegal work stoppage. While we affirm the dismissal of the Appellants' case for the reasons we have stated, the Appellants were not proven wrong in their argument that the call for an illegal act which immediately followed was not protected by the First Amendment and might support a claim for damages in some circumstances.

For an award of attorney's fees under KRS 454.478, such an award is mandatory if the moving party is successful *or* if the responding party prevails and a finding is made that the motion was brought without good cause. While Brewer and KY120 had every right to criticize the pending legislation, they did more than that. They were part of a group that engaged in an illegal work stoppage, violating KRS 336.130(1) and (2). Although ultimately unsuccessful, the Appellants' claims were based not on words but on actions not protected by the First Amendment. On the other hand, the Appellees had good cause to bring the UPEPA motion because they were being attacked also because of protected expression about pending legislation, which is at the heart of First Amendment freedom of speech. In the unique circumstances of this case, the UPEPA motion should have been denied recognizing good cause for having filed it. As a result, the circuit court ultimately did not err in refusing to award fees and expenses under UPEPA.

## CONCLUSION

The circuit court did not err in dismissing the Complaint. Even if the Appellants were within a class of people designed to be protected by KRS 336.130, they cannot establish standing due to a lack of provable causation to allow proper redress for the injury. The circuit court also did not abuse its discretion by denying any award of attorney's fees under UPEPA. The Judgment of the Fayette Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANTS:

Peter L. Ecabert
Lexington, Kentucky

Danial R. Suhr
Chicago, Illinois

BRIEFS AND ORAL ARGUMENTS
FOR APPELLEES:

Amy D. Cubbage
Marc G. Farris
Louisville, Kentucky